Thomas J. BUENEMAN and, Donna Bunes Bueneman, Plaintiffs/Appellants,

v.

James ZYKAN, Jr., Diane Frankenberg, Ray Frankenberg, and Elizabeth Frankenberg, Defendants/Respondents.

No. ED 85897.

Missouri Court of Appeals,
Eastern District,
Division Four.

Oct. 18, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 7, 2005.

Application for Transfer Denied
Jan. 31, 2006.

Earl Robert Schultz III, Phillips Corrigan—co-counsel, Chesterfield, MO, for plaintiffs/appellants.

James Zykan, Washington, MO, pro se.

Howard Stern Smotkin, St. Louis, MO, for Diane Frankenberg.

Isidore Ireland Lamke, Washington, MO, for Ray and Elizabeth Frankenberg.

SHERRI B. SULLIVAN, J.

*Introduction*

Thomas Bueneman (Thomas) and Donna Bueneman (Donna) (collectively Appellants) appeal from the summary judgment entered by the trial court in favor of Ray Frankenberg (Ray), Elizabeth Frankenberg (Elizabeth) (collectively the Frankenbergs), and Diane Frankenberg (Diane) (collectively Respondents), and from the court's order in favor of Respondents on their joint Motion to Dismiss Party; Alternative Motion to Enter Protection Order

and/or Order Separate Trial; or Alternative Motion for Express Determination that Judgment is Final and There is No Just Reason for Delay. In this order, the trial court dismissed the remaining defendant, James Zykan (Zykan). We reverse and remand for further proceedings.

*Facts and Proceedings Below*

In 1992, the State of Missouri began investigating environmental violations by Zykan and his companies involving landfills and improper disposal of waste. On October 8, 1993, Zykan married Diane. On October 25, 1993, Zykan transferred certain lake property he owned individually to himself and Diane as tenants by the entirety. On March 18, 1994, the State brought suit against Zykan and his companies. Appellants, farmers who live outside Wright City, were cross-claimants in the suit, alleging environmental violations against their own property. In September 1994, Diane and Zykan sold the lake property to Diane's parents, the Frankenbergs. On November 17, 1997, Appellants obtained a judgment against Zykan in the amount of $642,782.03. On September 4, 1998, Appellants filed suit against Zykan and Elizabeth (collectively the Zykans) and the Frankenbergs for transferring the lake property to defraud creditors. Appellants effected service against the Zykans by publication in the Washington Missourian pursuant to Missouri Rule of Civil Procedure 54.12(c), because attempted personal service in Missouri and service by registered mail in Belize, where the Zykans had moved, were unsuccessful.

On September 20, 1999, the trial court entered summary judgment in favor of the Frankenbergs, determining that there was no disputed issue of material fact hindering their entitlement to judgment as a matter of law on Appellants' fraudulent conveyance claim.

On March 28, 2000, the trial court entered a default judgment against the Zykans personally for a total of $779,244.99. On April 13, 2000, counsel for the Zykans filed a special limited entry of appearance and motion to set aside the default judgment on the basis that the trial court did not have personal jurisdiction over them. No answer or other pleadings were filed by the Zykans. On July 12, 2000, the trial court set aside the default judgment based on lack of personal jurisdiction, but found that the Zykans' entry, motion and challenge to the default judgment conferred personal jurisdiction over them and ordered them to respond within thirty days. The Zykans failed to file a response and the trial court entered a second default judgment against them on September 14, 2000.

On July 10, 2001, we reversed the trial court's September 20, 1999 entry of summary judgment in favor of the Frankenbergs in *Bueneman v. Zykan*, 52 S.W.3d 49 (Mo.App. E.D.2001). In *Bueneman*, we granted Appellants' single point on appeal alleging that there was a material issue of fact concerning the amount the Frankenbergs paid for the lake house that the Zykans transferred to them, thus making summary judgment improper. *Id.* at 57.

On March 22, 2002, Appellants filed the first amended petition in the instant case which alleges Fraudulent Conveyance, Constructive Trust and Money Had and Received against the Zykans and the Frankenbergs. Diane and the Frankenbergs filed a motion for summary judgment claiming that the statute of limitations had run on these claims against them. The trial court agreed. They also maintained that Zykan should be dismissed as the only remaining defendant since he had already transferred the lake property at issue to them and thus he had no ownership interest in the property.

The trial court agreed and dismissed Zykan. This appeal follows.

## Points on Appeal

Appellants present five points on appeal. In their first point, Appellants claim that the trial court erred in granting summary judgment to Respondents because there are no material undisputed facts which entitle Respondents to judgment, because this Court previously declared that Respondents are not entitled to summary judgment; because Appellants had substantial evidence supporting every element of their claims; because the amount the Frankenbergs paid for the lake house is in dispute; and because even if the Frankenbergs had paid $143,000.00 for the lake house, Diane never paid anything and even with payment a fraudulent conveyance may be shown.

In their second point, Appellants allege that the trial court erred in granting summary judgment to Respondents because as a matter of law the statute of limitations had not run before Appellants filed suit, because they brought their suit within one year of receiving the judgment against Zykan which liquidated and established their claims, and before the underlying judgment Appellants had no claim against Respondents for fraudulent conveyance; they brought their suit within one year of learning of Respondents' fraudulent conveyance; there is no evidence that Appellants knew about the fraudulent conveyance more than one year before bringing this lawsuit, and Respondents' allegations that Appellants should have known is a disputed fact issue; and MUFTA's [1] limitations period should be tolled during the years that the Zykans concealed their misconduct and evaded service of process by fleeing to Belize.

In their third point, Appellants maintain that the trial court erred in granting summary judgment on their constructive trust claim over the proceeds of the fraudulent conveyance because constructive trust is a remedy that may be imposed even if no confidential relationship existed between Appellants and Respondents.

In their fourth point, Appellants contend that the trial court erred in granting summary judgment on their money had and received claim because this claim may arise even if Appellants had no direct dealings with Respondents.

In their fifth point, Appellants assert that the trial court erred in granting Respondents' motion to dismiss Zykan or to certify this case for appeal because Respondents have no standing to dismiss claims against another defendant; the claims against Zykan are proper and supported by substantial evidence and Zykan has been served by publication; and no basis to certify the summary judgment as final for appeal exists nor is the decision explained in the court's order.

## Standard of Review

When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo.banc 1993). Appellate review is essentially de novo. *Id.* The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial

---

1. MUFTA is the Missouri Uniform Fraudulent Transfer Act, Sections 428.005–428.059, RSMo 1992.

court to determine the propriety of sustaining the motion initially. *Id.*

Our standard of review for the trial court's dismissal of a party is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and we must uphold the trial court's judgment unless it is not supported by substantial evidence, is against the weight of the evidence, or the court has erroneously declared or applied the law. *Id.* at 32.

## Discussion

### Point I

In their first point, Appellants assert that the trial court erred because there are disputed issues of material fact as to the elements of their fraudulent conveyance claim. However, Respondents' motions for summary judgment were based on the running of the statute of limitations for a fraudulent conveyance claim, not on the absence of disputed issues of material fact as to the elements of a fraudulent conveyance claim. The trial court's granting of the motions, without discussion, is deemed to be based on one or more of the arguments asserted within the motion. Because this argument was not raised in the motions for summary judgment, and thus not relied on by the trial court in its judgment, Appellants need not argue it here. As such, point one is denied.

### Point II

In their second point Appellants maintain that the statute of limitations on their fraudulent conveyance claim had not run before they filed suit. Section 428.049[2] provides the limitations period for a fraudulent conveyance claim:

Extinguishment of claim for relief or cause of action

A claim for relief or cause of action with respect to a fraudulent transfer or obligation under sections 428.005 to 428.059 is extinguished unless action is brought:

(1) Under subdivision (1) of subsection 1 of section 428.024, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or could reasonably have been discovered by the claimant;

(2) Under subdivision (2) of subsection 1 of section 428.024 or subsection 1 of section 428.029, within four years after the transfer was made or the obligation was incurred; or

(3) Under subsection 2 of section 428.029, within one year after the transfer was made or the obligation was incurred.

Appellants assert that they brought their claim within one year of learning of the fraudulent transfer, Section 428.049(1), and Respondents have failed to prove otherwise. Although Appellants do not cite a specific date upon which they learned of the fraudulent transfer, they maintain that on November 17, 1997, they obtained a judgment against Zykan in the amount of $642,782.03, which Zykan failed to honor, and on September 4, 1998, within one year of obtaining this judgment, they filed their suit for fraudulent transfer. Appellants' position is that they only discovered the fraudulent transfer when they attempted to execute on the judgment, and they should not reasonably have been expected to discover the fraud prior to the date they obtained a judgment against Zykan.

Respondents claim that the deed from Zykan to Diane and Zykan as tenants by the entirety was recorded on October 27, 1993, and thus was a matter of public

---

**2.** All statutory references are to RSMo 1992, unless otherwise indicated.

record as of that time and is deemed notice to Appellants. In support of their point, Respondents cite *Gibson v. Ransdell*, 188 S.W.2d 35, 38 (Mo.1945), where our Supreme Court held that the appellant's cause of action, if any, to set aside conveyances on the ground that they were fraudulent and void as to creditors accrued upon the filing of the deeds for record and any applicable statute of limitations ran from that date; and *Coleman v. Alderman*, 357 Mo. 758, 210 S.W.2d 994, 996 (1948), where the Court said that since the action was filed more than ten years after the recording of the deeds sought to be set aside it was barred by the (then) ten-year statute of limitations.

Both of these cases were decided well before the statute at issue was enacted in 1992. Therefore, they are not persuasive authority in this case. Section 428.049 specifically states when the transfer was or *could reasonably have been* discovered by the claimant. We don't believe that Appellants reasonably could be expected to search the recorder of deeds before they even obtained a judgment against Zykan, or before they realized their judgment was not going to be paid by Zykan. It is not reasonable to expect Appellants to see into the future and realize that they will obtain judgment against Zykan, Zykan will flee the country and not pay the judgment, and therefore Appellants are going to have to investigate his property and transactions concerning his property to determine if any have been fraudulent, so that they can bring an action for fraudulent transfer of such property if such fraud is found, in order to finally fulfill their judgment. Such a scenario suggested by Respondents is unreasonable.

■ Further, the purpose of the recording laws in general is to establish a priority between innocent claimants to the same property, not to give security to the perpetrators of fraud as against their victims. *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 507 (Mo.App. E.D. 1999), citing W.W. Allen, Annotation, Public Records As Notice Of Facts Starting Running Of Statute Of Limitations Against Action Based On Fraud, 137 A.L.R. 268, 276 (1942).

'The proposition is frequently announced that, under the registration laws, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. The recording of a deed or mortgage, therefore, is constructive notice only to those who have subsequently acquired some interest or right in the property under the grantor or mortgagor.' 23 RCL p. 211, s 71.

'It is apparent, therefore, that where a court decides that a defrauded party is charged with notice of facts appearing from the records, so as to start the running of the statute of limitations against his action, the ruling cannot well be based on the recording laws, because those laws have reference to the outstanding rights and interests of third persons and are intended to give protection to those who in good faith acquire interests in reliance upon the records and who meet the conditions laid down. The recording laws establish a priority as between innocent claimants to the same property or right; they are not intended to give security to the perpetrators of fraud as against their victims. As pungently stated in *Andrews v. Smithwick* (1870) 34 Tex. 544, * * *, the recording laws do not make 'provision for the registration of fraud.'

'* * * (T)he purpose of recording laws is to notify persons acquiring title or rights subsequent to those of record, and not to give protection to the perpetrators of fraud. * * *'

*Dreckshage v. Community Fed. Sav. and Loan Ass'n,* 555 S.W.2d 314, 319–320 (Mo. banc 1977), quoting Allen, supra.

◾ Respondents also claim that Diane told Appellants about the transfer of the lake property in her February 1995 deposition. Respondents maintain that Diane testified that Zykan transferred the lake property to Zykan and herself jointly after their marriage and that they subsequently sold the lake property to the Frankenbergs. We cannot glean from the deposition testimony where Diane clearly states that Zykan transferred the lake property to Zykan and herself jointly after their marriage. Furthermore, Diane did not produce the deed for the transfer of the lake property despite a subpoena asking for production of "all deeds for real estate."

Based on the failure of their arguments, we find that Respondents are not entitled to judgment as a matter of law on the statute of limitations issue. Further, we find that there exists a fact issue as to when Appellants should have known of the transfer. We are not sure what date the trial court determined that to be since it made no findings. However, where the running of the statute of limitations depends upon when the plaintiff discovered or by reasonable diligence could have discovered the fraud, a question of fact is presented. *Brown v. Scheible,* 814 S.W.2d 5, 7 (Mo.App. E.D.1991), citing *Schwartz v. Lawson,* 797 S.W.2d 828, 833 (Mo.App. W.D.1990).

Since we have found that summary judgment was inappropriate in this case because Respondents failed to show they were entitled to judgment as a matter of

law and there is a remaining fact issue, we need not address Appellants' additional argument that MUFTA's limitations period should be tolled during the years that Zykan and Diane concealed their misconduct and evaded service of process by fleeing to Belize.

Point II is granted.

### Points III and IV

In their third and fourth points, Appellants assert that the trial court should not have granted summary judgment on their constructive trust and money had and received claims. Constructive trust is a remedy based on Appellants' fraudulent transfer action. Money had and received is a claim contingent upon Appellants' successfully maintaining their fraudulent transfer action. Summary judgment as to these claims is inappropriate in light of our reversal of the summary judgment on Appellants' fraudulent transfer action.

◾ Diane argues that Appellants' constructive trust claim fails as a matter of law because she never had a fiduciary or confidential relationship with Appellants. However, such a relationship is not a requirement for a constructive trust claim. "A constructive trust is a method by which a court exercises its equitable powers to 'remedy a situation where a party has been *wrongfully deprived of some right,* title, benefit or interest in property as a result of fraud *or* in violation of confidence or faith reposed in another.'" *Fix v. Fix,* 847 S.W.2d 762, 765 (Mo. banc 1993), citing *Schultz v. Schultz,* 637 S.W.2d 1, 4 (Mo. banc 1982) (emphasis added by the court). The object of the constructive trust is to restore to the rightful owner the property wrongfully withheld by the defendant. *Fix,* 847 S.W.2d at 765, citing *March v. Gerstenschlager,* 436 S.W.2d 6, 8 (Mo. 1969).

Diane also argues, as do the Frankenbergs, that they never took or received any money from Appellants in order to justify a money had and received claim. However, such a claim is not limited to such a literal interpretation. Rather, "[a]n action for money had and received" is a very broad and flexible action, which seeks to reach monies which in equity and good conscience ought not to be retained by the defendant but ought to be paid to plaintiff. It is a legal action, but based upon equitable principles. The tendency of the courts is to widen rather than restrict its scope. *Alarcon v. Dickerson*, 719 S.W.2d 458, 461 (Mo.App. W.D.1986).

For the foregoing reasons, we find that the trial court improperly granted Respondents summary judgment on Appellants' constructive trust and money had and received claims. Points III and IV are granted.

### Point V

In their fifth and final point, Appellants allege that that the trial court erred in granting Respondents' motion to dismiss Zykan or to certify this case for appeal because Respondents have no standing to dismiss claims against another defendant; the claims against Zykan are proper and supported by substantial evidence and Zykan has been served by publication; and no basis to certify the summary judgment as final for appeal exists nor is the decision explained in the court's order.

Respondents claimed in their motion to dismiss Zykan that he had transferred the property at issue and thus no longer has any interest in it, and therefore should be dismissed under Missouri Rule of Civil Procedure 52.06, which allows the court to dismiss misjoined parties.[3] However, Zykan is a central party to Appellants' fraudulent transfer claim. His actions are at the heart of their claim, and he is properly a defendant along with Respondents under Missouri Rule of Civil Procedure 52.05, which provides:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrences or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action.

Perhaps the trial court determined that since it had granted to Respondents summary judgment on the fraudulent transfer claim, it may as well dismiss Zykan. The trial court made no findings in its order, and thus we are left only to speculate. In any event, we determine that the trial court erred in granting Respondents' motion to dismiss Zykan since he is clearly a necessary party to this action. We need not visit the issue of their standing to even pursue such a motion since the granting of it was clearly in error for substantive reasons.

Appellants' claim that the trial court had no basis to certify the summary judgment as final for appeal is moot due to our reversal of that judgment.

For the foregoing reasons, Point V is granted.

The trial court's summary judgment in favor of Respondents and its order dismissing Zykan are reversed. This cause is

---

3. Rule 52.06 provides:
   Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

remanded for further proceedings consistent with this opinion.

NANNETTE A. BAKER, P.J., and ROBERT G. DOWD, JR., J., concur.