Steven C. LARABEE and Frances
C. Larabee, Appellants,

v.

Buddy EICHLER and Dorothy
Eichler, Respondents.

No. SC 89097.

Supreme Court of Missouri,
En Banc.

Dec. 16, 2008.

J. Eric Mitchell, Johns Lilleston & Mitchell, LLC, Clinton, MO, for Appellants.

James Owen Kjar, Shipley & Kjar, L.L.C., Warsaw, MO, for Respondents.

WILLIAM RAY PRICE, JR., Judge.

## I. Introduction

Steven and Frances Larabee ("Larabees") brought an action against Buddy and Dorothy Eichler ("Eichlers") for misrepresentation as to the sale of certain real property located in Benton County, Missouri. The trial court granted the Eichlers' motion for summary judgment as to Count I, stating the Larabees' action was barred by statute of limitations section 516.120(5).[1] The trial court also granted

---

1. All statutory references are to RSMo 2000, unless otherwise noted. § 516.120(5) states: Within five years:

. . . .

(5) An action for relief on the ground of fraud, the cause of action in such case to be

Eichlers' motion for summary judgment as to Count II, finding the Larabees' failed to produce evidence of damages to support their claim.

The Court holds that a seller of real property charged with fraudulent misrepresentation cannot rely upon county real estate records as constructive notice of the fraud. The Court also holds that the Larabees came forward with sufficient evidence of damages to support their claim. The judgment of the trial court is reversed, and the case is remanded.

## II. Facts

On March 1, 1998, the Larabees entered into an agreement to purchase a parcel of land owned by the Eichlers and located in Benton County, Missouri ("1998 Agreement"). Buddy and Dorothy Eichler were the owners and developers of a subdivision known as Sterett Creek Village. Additionally, Buddy Eichler served as a trustee for the Sterett Creek Village Trusteeship ("Trusteeship") from 1986 through 2004.

The Eichlers made both oral and written representations to the Larabees that they owned several lots located in Sterett Creek Village as well as the surrounding undeveloped parcels of land and that all of the property was or would be subject to the rights and privileges of the Trusteeship, including restrictive covenants.[2] On April 10, 1998, the Eichlers executed a warranty deed that conveyed Lot 403, Sterett Creek Village, a subdivision in Benton County, Missouri, and subject to easements, restrictions and reservations of record, to the Larabees. Two years later, in 2000, relying on similar representations made by the Eichlers, the Larabees agreed to purchase Lot 402, Sterett Creek Village, and

the Eichlers executed a warranty deed conveying the property to the Larabees ("2000 Agreement").

The Larabees built and lived in a home on Lot 403, Sterett Creek Village. Until 2004, the Larabees were billed and paid assessments and well hookup fees to the Trusteeship; allowed to attend and vote in the annual meetings of the Trusteeship; and enjoyed the use of the Sterett Creek Village swimming pool and pavilion; all of which was known and permitted by the Eichlers.

Beginning in 2002, the Eichlers placed brush piles and a mobile home camper on a parcel of land adjoining the Larabees' property. Subsequently, the Larabees initiated a lawsuit seeking to enforce the restrictive covenants of the Trusteeship that would require the Eichlers to remove the brush piles and mobile home camper from the adjoining property. The trial court dismissed the Larabees' lawsuit, finding that the Larabees lacked standing to enforce the restrictive covenants because the property owned by them was not within the boundaries of the Trusteeship.

On March 29, 2004, the Larabees brought this action against the Eichlers for misrepresentation. They allege that from the time the agreements were entered into, the Eichlers knew that the representations made regarding the location of the properties as inside the boundaries of Trusteeship were false and that the Larabees would not be able to enjoy the rights and privileges of the Trusteeship. The Eichlers claim the true status was in the recorded warranty deeds, which state, in part:

deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

2. The issue of whether an oral representation regarding a future restriction on the use of real estate is actionable is not addressed.

Lot 403, STERETT CREEK VIL-LAGE, a subdivision in Benton County, Missouri, according to the recorded plat thereof.

Subject to easements, restrictions and reservations of record, if any.

The above described Lot 403 is hereby made subject to the Trust Indenture and Restrictive Covenants recorded in Book 395, page 267 in the office of the Recorder of Deeds for Benton County, Missouri.[3]

The property included in the trust indenture and restricted covenants is described as "[t]he South half of the Southwest quarter of Section 28, Township 41 North, Range 22 West of the 5th P.M. in Benton County, Missouri; EXCEPT ..." There follows two exceptions described by metes and bounds. This first exception contains the property owned by the Larabees. The trust indenture and restrictive covenants state that the restrictive covenants are mutually enforceable only between the Trustee and owners of lots *covered by* the trust indenture instrument.[4]

The trial court granted the Eichlers' motion for summary judgment on Counts I and II. The trial court found that Count I, which relates to the 1998 Agreement for Lot 403, was untimely and barred by statute of limitations section 516.120(5). The trial court found that the Larabees failed to produce evidence of damages to support Count II, which relates to the 2000 Agreement for Lot 402.

The Larabees claim that the trial court erred in entering judgment in favor of the Eichlers as to Count I because the Larabees did not discover the fraud until the Eichlers began placing the brush piles and

mobile home camper on the property adjoining the Larabees. As to Count II, the Larabees contend the trial court erred because sufficient evidence was presented to establish an issue of material fact as to the amount of damages claimed in regards to the purchase of Lot 402.

### III. Standard of Review

■ The standard of review when considering an appeal from summary judgment is essentially de novo. *ITT Commercial Finance v. Mid-America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *White v. Zubres*, 222 S.W.3d 272, 274 (Mo. banc 2007); Rule 74.04(c)(6).

#### A. Count I–Statute of Limitations/Fraud

■ "A party who moves for summary judgment on the basis of a statute of limitations bears the burden of showing that the statute bars the plaintiff's claims." *Id.* (quoting *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576, 580 (Mo. banc 2006)). Summary judgment is only proper where it is shown that there is no genuine issue of material fact as to when the fraud was discovered or should have been discovered. *Taryen Dev., Inc. v. Phillips 66 Co.*, 31 S.W.3d 95, 103 (Mo. App.2000).

#### B. Count II–Damages

■ "[A] defending party moving for summary judgment, may 'establish a right to judgment by showing ... facts

---

3. The warranty deed for Lot 403 is recorded in Book 460 at page 466. The warranty deed for Lot 402 contains the same clause and is recorded in Book 474 at page 973.

4. The deed for Lot 402 contained the same description, differing only as to the lot conveyed.

that negate *any one* of the claimant's elements ...' " *Fetick v. American Cyanamid Co.*, 38 S.W.3d 415, 418 (emphasis in the original). "If the moving party makes a prima facie showing they are entitled to judgment as a matter of law, the nonmoving party then has a specific burden: 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response,* by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial.' " *Id.* (emphasis in the original). The court accords the nonmoving party the benefit of all reasonable inferences in the record. *ITT Commercial Finance*, 854 S.W.2d at 376.

### IV. Analysis

### A. Count I–Fraudulent Misrepresentation and the Statute of Limitations

■ The elements of a cause of action for misrepresentation are set out in *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. banc 2007), as

(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988); *see Trimble v. Pracna*, 167 S.W.3d 706, 712–13 (Mo. banc 2005) (reversing denial of JNOV on fraud).

*See also* M.A.I. 23.05. An action for fraud must be discovered within ten years of the facts constituting the fraud. Once the fraud is discovered, an action must be brought within five years. Section 516.120(5).

■■ "A cause of action for fraud accrues at the time the defrauded party discovered or in the exercise of due diligence should have discovered the fraud." *Burr v. Nat'l Life & Accident Ins. Co.*, 667 S.W.2d 5, 7 (Mo.App.1984). "It is generally held that where the facts constituting the fraud appear on the face of a record deed, the record of the deed furnishes constructive notice of the fraud so as to set the statute of limitations in motion." *Briece v. Bosso* 158 S.W.2d 463, 468 (Mo. App.1942). The real estate contracts and deeds presented to the Larabees represented that Lot 402 and Lot 403 were in Sterett Creek Village. The Eichlers claim that the true rights and privileges accorded to Lot 403 was discoverable in the records maintained by the Benton County recorder of deeds and that the Larabees were subject to constructive notice of the same at the time of purchase.

■ This Court discussed the purpose of our system of recording interests in real estate relative to the statute of limitations and issues of constructive notice in *Dreckshage v. Community Fed. Sav. and Loan Ass'n*, 555 S.W.2d 314, 319–20 (Mo. banc 1977). Quoting from W.W. Allen, Annotation, *Public Records As Notice Of Facts Starting Running Of Statute of Limitations Against Action Based On Fraud,* 137 A.L.R. 268, 276 (1942), this Court noted:

'The proposition is frequently announced that, under the registration laws, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. The

recording of a deed or mortgage, therefore, is constructive notice only to those who have subsequently acquired some interest or right in the property under the grantor or mortgagor.' 23 RCL p. 211, s 71.

It is apparent, therefore, that where a court decides that a defrauded party is charged with notice of facts appearing from the records, so as to start the running of the statute of limitations against his action, the ruling cannot well be based on the recording laws, because those laws have reference to the outstanding rights and interests of third persons and are intended to give protection to those who in good faith acquire interests in reliance upon the records and who meet the conditions laid down. The recording laws establish a priority as between innocent claimants to the same property or right; they are not intended to give security to the perpetrators of fraud as against their victims. As pungently stated in *Andrews v. Smithwick* (1870) 34 Tex. 544, * * *, the recording laws do not make 'provision for the registration of fraud.'

' * * * (T)he purpose of recording laws is to notify persons acquiring title or rights subsequent to those of record, and not to give protection to the perpetrators of fraud. * * *'

*See also, Bueneman v. Zykan,* 181 S.W.3d 105, 112 (Mo.App.2005).

■ As to any innocent third party, the Larabees would be bound by the facts appearing in the real estate records. The Eichlers, however, are the sellers and not a third party. Because "the recording laws do not make for the registration of fraud," they do not operate to provide constructive notice to a good faith purchaser relative to the seller. The statute of limitations did not start running against the Larabees until they obtained actual notice of the fraud. To hold otherwise would also imply that the Larabees would not have a "right to rely" upon any of the written and oral representations made by the Eichlers if they misrepresented prior real estate recordings. Sellers are not allowed such unbridled license. This is especially so when the written deed given to the Larabees on its face identified "Lot 403, Sterert Creek Village" and "Lot 402, Sterert Creek Village," despite the fact that the trust indenture filed in the records did not describe the village by metes and bounds to include these two lots.

■ A second reason exists to refuse Mr. Eichler's attempt to rely upon the real estate recordings as constructive notice. Mr. Eichler served as a trustee of the Trusteeship. As such, he purported to stand in a fiduciary relationship to the Larabees and continued as such so long as they were billed for trusteeship expenses and enjoyed trusteeship privileges.

> The failure to use ordinary diligence to discover the fraud may be excused where there exists some relation of trust and confidence, as principal and agent, client and attorney, cestui que trust and trustee, between the party committing the fraud and the party who is affected by it, rendering it the duty of the former to disclose to the latter the true state of the transaction, and when it appears that it was through confidence in the party who committed the fraud that the other was prevented from discovering it.

*Thompson v. Lyons,* 281 Mo. 430, 220 S.W. 942 (1920); *see also Vogel v. A.G. Edwards & Sons, Inc.* 801 S.W.2d 746, 754 (Mo.App. 1990); *Briece v. Bosso* 158 S.W.2d 463, 468 (Mo.App.1942).

The trial court erred in granting summary judgment on Count I.

### B. Count II–Damages

In Count II of their petition, the Larabees alleged that they purchased Lot 402 for $11,000 and it is now worthless. For the limited purposes of the motion for summary judgment, the Eichlers concede that the Larabees could prove all the elements of their fraud claim except damages.

 Missouri has adopted the "benefit of the bargain" rule, which states the appropriate measure for damages in a fraudulent misrepresentation case is the difference between the fair market value of the property received and the value if the property had been as represented. *Heberer v. Shell Oil Co.* 744 S.W.2d 441, 443 (Mo.1988). The damages are measured at the time of the transaction. *Id.* "It has been held, however, that the contract price is strong evidence of the value of the property if it had been as represented." *Smith v. Tracy* 372 S.W.2d 925, 939 (Mo. 1963).

In support of their motion for summary judgment, the Eichlers set forth the following material facts: (1) in response to discovery requests, the Larabees stated they "had no idea" as to the value Lot 402 as of February 1, 2000, or the value of the land had the alleged representations been in fact true; and (2) the Larabees' property appraiser testified under oath in his deposition that the value of Lot 402 would not have decreased based on any restrictions to the surrounding property.

██ In response to the motion for summary judgment, the Larabees filed an affidavit based on an appraisal that measured the market value of damages to Lot 402 and Lot 403 at $17,000. The amount of damages was determined using a "Sales Comparison Analysis" method whereby the appraiser compared the subject property (Lot 402 and Lot 403) with the sale prices of similar property, making positive and negative adjustments in value based on the specific characteristics of the property. In applying this method, the appraiser reviewed approximately ninety sales of properties, between 2003 and September 2005, and concluded that because Lot 402 and Lot 403 did not enjoy the rights and privileges of being within Sterett Creek Village, the Larabees' property had a decrease in value of forty percent. The appraiser then deducted forty percent from the combined purchase price the Larabees paid for Lot 402 and 403 ($43,000) and stated the damages at $17,200, or $17,000 rounded.

For the purposes of summary judgment, the Larabees' appraisal provides sufficient evidence of a difference between the fair market value of the property received and the property had it been as represented. The appraisal sets out a genuine issue for trial in that it provides specific facts supporting the existence of damages. The trial court erred in granting the Eichlers' motion for summary judgment on Count II.

### V. Conclusion

The judgment of the trial court is reversed, and the cause is remanded.

LAURA DENVIR STITH, C.J., TEITELMAN, RUSSELL, WOLFF and BRECKENRIDGE, JJ., and DOWD, Sp.J., concur.

FISCHER, J., not participating.