# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-2599

_____

David L. White

*Plaintiff - Appellant*

v.

CitiMortgage, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 11, 2017
Filed: June 16, 2017

_____

Before RILEY,[1] Chief Judge, LOKEN and BENTON, Circuit Judges.

_____

RILEY, Chief Judge.

David White thought he had saved his house from foreclosure. He paid the mortgage servicer, CitiMortgage, Inc., thousands of dollars to undo a sale to the

---

[1]The Honorable William Jay Riley stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on March 10, 2017. He has been succeeded by the Honorable Lavenski R. Smith.

Federal Home Loan Mortgage Corporation (Freddie Mac) and to let White continue paying off his debt. Thereafter he paid many thousands more on the statements CitiMortgage resumed sending him each month. Yet when White tried to sell the house five years later, he discovered he did not own it, Freddie Mac did—it turns out the title was never actually transferred back to White after the foreclosure sale and White's reinstatement payment. The district court ruled it was too late for White to sue CitiMortgage for misleading him, because, as fate would have it, five years is also the governing statute of limitations. See Mo. Rev. Stat. § 516.120. The limitation clock had been running the whole time, according to the district court, because White could and should have checked with the county recorder to make sure his title was restored after he made the reinstatement deal with CitiMortgage. We reverse and remand.

## I.    BACKGROUND

White refinanced his house in 2003. By early 2008, Freddie Mac had acquired the debt, CitiMortgage was servicing it, and White was in default. CitiMortgage notified White and held a foreclosure sale, which White did not attend. Freddie Mac made the winning bid, equal to the amount necessary to pay off the loan, just over $90,000. The deed transferring title to Freddie Mac was recorded in Jackson County, Missouri, on April 7, 2008. Three days later, Freddie Mac began eviction proceedings.

About two months later, in June, White reached an oral agreement with CitiMortgage to pay roughly $6,600 to "reinstate" the debt so he could continue living in the house. Freddie Mac acquiesced and dropped its efforts to evict White. Freddie Mac, as did White and at least some of the CitiMortgage employees involved in the transaction, assumed CitiMortgage would take the necessary steps to rescind

-2-

the deed and restore White's title.[2]  For unknown reasons, CitiMortgage failed to do so.

CitiMortgage also failed to apply White's "reinstatement" payment to the loan right away.  By the time CitiMortgage processed the $6,600, it was no longer enough to bring the debt current.  Treating the shortfall as a trigger for "loss mitigation options," CitiMortgage then approached White about modifying his loan.  White and CitiMortgage's agent signed a modification agreement in October 2008.  The modification unquestionably was premised on White again owning the house.  Among other things, the agreement—which CitiMortgage prepared and presented to White—provided that the original deed of trust securing the loan "shall remain in full force and effect," necessarily presupposing that the subsequent "Trustee's Deed Under Foreclosure" reflecting the sale to Freddie Mac had not overridden the original trust deed.  More fundamentally, there simply would have been no reason for such a transaction (or, for that matter, for CitiMortgage to continue dealing with White at all) if the foreclosure were complete and effective, extinguishing the debt, and the house belonged to Freddie Mac.

In the fall of 2013, White moved and decided to sell the house.  His realtor ran a title search and discovered White was not the record owner.  By then, White had paid almost $90,000 on the modified loan.  White sued CitiMortgage in Missouri state court in late January 2014.  Freddie Mac intervened and removed the case to federal court, see 12 U.S.C. § 1452(f)(3), seeking an order setting aside the deed from the foreclosure sale and enforcing the modified loan—in other words, judicial

---

[2]It is not clear from the record how exactly the parties contemplated CitiMortgage carrying out its side of the deal (or whether they had anything specific in mind), but the precise mechanics are not necessary to our decision on appeal.  Nor do we need to decide whether the agreement was in fact legally enforceable.  What matters is White expected CitiMortgage to give him his title back, and White thought CitiMortgage had done so.

permission to proceed as if everything happened the way it was supposed to occur. White resisted Freddie Mac's proposed disposition, arguing the circumstances had changed and he now wanted money damages, not the house.[3] White ultimately pled four counts: fraud, "negligent inducement/negligent non-disclosure," "constructive fraud/restitution," and "violation of the Missouri Merchandising Practices Act" (MMPA), Mo. Rev. Stat. § 407.020(1).

On cross-motions for summary judgment, the district court held White's claims were all time-barred, without addressing the merits. Citing Federal Rule of Civil Procedure 41(a)(1)(A)(ii) and (c), the parties then agreed to have Freddie Mac's claims dismissed with prejudice. The district court entered an order to that effect.[4] Having disposed of all the parties and claims in the case, the district court also entered final judgment, from which White appeals. See 28 U.S.C. § 1291 (appellate jurisdiction).

## II. DISCUSSION

We review the grant of summary judgment de novo. See, e.g., Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006). See generally Fed. R. Civ. P. 56(a). The parties agree White's claims are all subject to a five-year statute of limitations. See Mo. Rev. Stat. § 516.120; see also, e.g., Klemme v. Best, 941 S.W.2d 493, 497 (Mo. 1997) ("Section 516.120(4) does apply to claims of breach of fiduciary duty or constructive fraud."); Royal Forest Condo. Owners's Ass'n v. Kilgore, 416 S.W.3d

---

[3]White submitted evidence (some of which was contested and the district court never definitively ruled on) that after he told CitiMortgage he would no longer take care of the house, seeing as the house was not his, the house was vandalized, stripped of materials, left exposed to the elements, and eventually declared a nuisance.

[4]At oral argument, White suggested we order the case sent back to state court because Freddie Mac is no longer involved. The question of whether to continue exercising supplemental jurisdiction over the remaining claims is for the district court in the first instance. See 28 U.S.C. § 1367(a), (c)(3).

370, 373 (Mo. Ct. App. 2013) ("An action for unjust enrichment is . . . subject to the five-year statute of limitations in Section 516.120(1)."). The dispute is over whether the five years started running—in the summer or fall of 2008, or the fall of 2013.

Generally, claims accrue "when the damage . . . is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. As White points out on appeal, Missouri law provides a more forgiving standard for "action[s] for relief on the ground of fraud," which are "deemed not to have accrued until the discovery . . . of the facts constituting the fraud." Mo. Rev. Stat. § 516.120(5). We can ignore that exception, and need not parse which of White's claims it covers, cf. Huffman v. Credit Union of Tex., 758 F.3d 963, 968-69 (8th Cir. 2014) ("[T]he five-year statute of limitations for a narrow subclass of MMPA claims—those based on allegations of 'fraud'—may be governed by subsection (5)."), because White's claims were all timely even under the usual, easier to trigger "capable of ascertainment" standard.

To be sure, White *could have* discovered that CitiMortgage had not unwound the foreclosure sale by White checking the public records in the summer and fall of 2008. In an everyday sense, the injury and damages he alleges certainly were "capable of ascertainment" more than five years before he filed this suit. That is the way CitiMortgage argues this issue, and how the district court decided it—emphasizing, respectively, that "nothing prevented [White] from discovering that Freddie Mac still owned the property" and the truth about the status of White's title "was readily available" to him the whole time. Yet however we might read the words "capable of ascertainment" if we were coming to the statute fresh, this is a dispute about Missouri law, and we must follow the Missouri Supreme Court's interpretation. See, e.g., Mahanna v. U.S. Bank Nat'l Ass'n, 747 F.3d 998, 1002 (8th Cir. 2014). That court has expressly rejected such a literal approach, opting instead to "g[i]ve the phrase 'capable of ascertainment' a practical construction," according to which "until [a] plaintiff has sufficient knowledge to be put on 'inquiry notice' of the wrong and

damages, th[e] standard is not met." Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582-83 (Mo. 2006).

Thus the statute of limitations on White's claims only started running "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." Id. at 584; see also Mahanna, 747 F.3d at 1004 ("Notice of a need to investigate triggers claim accrual but not every potential source of suspicion or insecurity gives rise to a duty to investigate."). Our recent decisions applying the "capable of ascertainment" standard reflect this "practical" approach and illustrate the types of notice that can suffice. In a case involving car-buyers who alleged they were misled into taking out loans that included amounts to cover their lender's insurance, we held the claims accrued when the buyers received deficiency notices showing that even after making payments for years, they still owed more than they originally paid for their cars. See Huffman, 758 F.3d at 966-68. And in a case against a bank for allegedly losing gold coins pledged as collateral, we determined the plaintiff was on notice something might be wrong when one bank representative said he could not find the coins and others gave inconclusive responses to the plaintiff's follow-up inquiries. See Mahanna, 747 F.3d at 1004-06.

CitiMortgage, not recognizing this is what the statute requires, does not identify anything comparable that should have prompted White to ask, sometime before January 2009, whether something had gone wrong with restoring his title. See id. at 1002 (explaining the burden of proof is on the party asserting the statute-of-limitations defense). Nor can we discern anything in the record that might have provided the requisite notice and caused White's claims to become "capable of ascertainment" in the relevant sense. By all indications, until White tried to sell the house, everything seemed to be in order with the title underlying his mortgage. If anything, that impression was reinforced by the limited information White did receive in the form of Freddie Mac ceasing its efforts to evict him and CitiMortgage

approaching him about modification, sending him monthly statements and tax forms, and communicating with him about various payment issues as they arose.

Missouri's recording law does not dictate a contrary conclusion, even though it says instruments conveying or affecting real estate "shall, from time of filing . . . , impart notice to all persons of the contents thereof," Mo. Rev. Stat. § 442.390. For one thing, despite the statute's unqualified language, the Missouri Supreme Court has declared "'[t]he record of an instrument is notice only to those who are bound to search for it[,] . . . not a publication to the world at large.'" Larabee v. Eichler, 271 S.W.3d 542, 546 (Mo. 2008) (quoting Dreckshage v. Cmty. Fed. Sav. & Loan Ass'n, 555 S.W.2d 314, 319 (Mo. 1977)); see also, e.g., Stenger v. Great S. Sav. & Loan Ass'n, 677 S.W.2d 376, 385 (Mo. Ct. App. 1984) ("[T]he [recording law] goes on to specify that it is 'subsequent purchasers and mortgagees' who are bound by the notice, and this is supported by authority which notes the statute has no application to one who already has acquired his interest before some new document is recorded affecting the land." (quoting Mo. Rev. Stat. § 442.390)). The Missouri Supreme Court has declined to extend the recording law to situations similar to what White has alleged. See Larabee, 271 S.W.3d at 546-47 (refusing to treat good-faith buyers as knowing facts that appeared in real-estate records for purposes of determining when a fraud claim against the sellers accrued, because "'[t]he recording laws establish a priority as between innocent claimants to the same property or right; they are not intended to give security to the perpetrators of fraud as against their victims'" (quoting Dreckshage, 555 S.W.2d at 319-20)). Further, in light of the Missouri court's emphasis on "the purpose of [Missouri's] system of recording interests in real estate," id. at 546, we think it significant that although the recording law speaks of "notice," the notice it imputes is a legal fiction—no one really thinks "all persons" actually become aware of every detail of Missouri real estate filing statuses the moment a document is filed in a county office, or not filed. That makes it a poor fit with the "practical" approach the Missouri Supreme Court has made clear governs the determination of when injury and damages are "capable of ascertainment," which

-7-

looks to the circumstances a potential plaintiff is aware of at the relevant time and asks how a reasonable person would respond. See Powel, 197 S.W.3d at 583; see also Mahanna, 747 F.3d at 1004-06.

Having concluded White's suit is timely, we decline CitiMortgage's invitation to affirm on the alternative basis that the fraud and MMPA claims fail on the merits. In short, we think the merits questions are closer than CitiMortgage makes them seem. As to the fraud claim, CitiMortgage's representation to us that the record contains "no evidence to show that CitiMortgage knew when it presented the loan modification agreement that [White] was not record owner of the property"—key to establishing scienter, see, e.g., Larabee, 271 S.W.3d at 546 (elements of fraud)—is belied by CitiMortgage's express admission of precisely that point in its summary-judgment briefing to the district court.[5]

We are similarly unconvinced by CitiMortgage's assertion that the MMPA claim, at least as presented on appeal, "arises from the loan modification agreement," rather than "in connection with the sale" of the original loan, and thus does not fall within the statute's ambit. Mo. Rev. Stat. § 407.020(1); cf. Watson v. Wells Fargo Home Mortg., Inc., 438 S.W.3d 404, 408 (Mo. 2014) ("In engaging in loan modification negotiations, Wells Fargo was not enforcing the terms of the loan but rather contemplating creating a new agreement. Its actions were not 'in connection with' the sale of the original loan." (quoting Mo. Rev. Stat. § 407.020(1))). As we read White's pleadings and briefs, the essence of the MMPA claim has consistently been that CitiMortgage unfairly misled White about the effect of the $6,600 he paid in June 2008 on his title and liability for the original debt. Missouri case law is clear that "loan collection procedures, whether initiated by a loan originator or a loan

---

[5]In response to White's statement of material facts, CitiMortgage wrote: "Admitted: CitiMortgage knew when it presented the Loan Modification Agreement to White in October 2008 that the house was titled in the name of Freddie Mac."

servicer, are done 'in connection with' the original procurement of the loan." Conway v. CitiMortgage, Inc., 438 S.W.3d 410, 416 (Mo. 2014) (quoting Mo. Rev. Stat. § 407.020(1)).  Because the purported "reinstatement" arrangement was part of CitiMortgage's efforts to enforce and collect on the original, unmodified loan, we conclude White's allegations are covered by the MMPA, at least in this respect.  Cf. Wivell v. Wells Fargo Bank, N.A., 773 F.3d 887, 899 (8th Cir. 2014) ("[F]oreclosing on the [plaintiffs'] property despite informing them that applying for a loan modification would suspend a foreclosure was 'in connection with' a sale under the MMPA." (quoting Mo. Rev. Stat. § 407.020(1))).

Finally, although White's arguments on appeal are limited to his fraud and MMPA claims, we conclude it is appropriate to reverse the dismissal of his other, equitable claims as well.  Cf., e.g., Pfoutz v. State Farm Mut. Auto. Ins., 861 F.2d 527, 530 n.3 (8th Cir. 1988).  White's allegations strike us as sounding at least as much in equity and unjust enrichment as in fraud and deception.  And the district court relied on the same statute-of-limitations analysis (and nothing else) to dismiss all of White's claims, so we see no legal or logical reason why our interpretation of the statute and our holding about when the claims accrued should not similarly apply across the board.

## III.   CONCLUSION

The grant of summary judgment to CitiMortgage is reversed.  The case is remanded for consideration of the merits of White's claims.

_____