Jessica STACY and Brian
Stacy, Appellants,

v.

The BAR PLAN MUTUAL
INSURANCE COMPANY,
Respondent,

and

Law Office of Jeffrey M. Witt LLC and
Jeffrey M. Witt, Defendants.

No. ED 104705

Missouri Court of Appeals,
Eastern District,
DIVISION ONE.

FILED: July 18, 2017

ATTORNEY FOR APPELLANT:
James R. Dowd, Law Office of James R.
Dowd, 34 N. Brentwood Blvd., Suite 209,
Clayton, MO 63105, Matthew P. O'Grady,
Co-Counsel, O'Grady Law Firm, LLC,
7710 Carondelet Ave., Ste. 208, St. Louis,
MO 63105.

ATTORNEY FOR RESPONDENT:
Thomas Joseph Plunkert, Joseph L. Leritz
Co-Counsel, LERITZ & PLUNKERT PC,

555 Washington Avenue, Suite 600, St. Louis, MO 63101.

## OPINION

Mary K. Hoff, Judge

Jessica Stacy ("Mrs. Stacy") and Brian Stacy ("Mr. Stacy" and collectively, the "Stacys") appeal from the trial court's "Order on Plaintiffs' Motion for Summary Judgment" ("Order"), which denied their motion for summary judgment ("Motion") against The Bar Plan Mutual Insurance Company ("Bar Plan") on the claim of equitable garnishment. Since the Stacys do not appeal from a final judgment, we dismiss this appeal.

### Factual and Procedural Background

On November 25, 2007, the Stacys sustained personal injuries when an automobile struck their vehicle head-on. On November 27, 2007, to pursue their respective claims for bodily injury, medical expenses, and lost wages from the accident, the Stacys signed separate representation agreements with then-attorney Jeffrey Witt (Jeffrey Witt and Law Office of Jeffrey M. Witt, LLC hereafter collectively referred to as "Witt"). After signing the representation agreement, the Stacys communicated solely with Bernard Becton ("Becton"), then an employee of Witt, who assumed responsibility for the Stacys' case, informing them that "[Witt] is giving you guys to me to take care of." Unbeknownst to the Stacys, Becton was a disbarred lawyer, and in May of 2010, without permission from the Stacys and without having investigated the assets of the tortfeasor or looking into the possibility of additional existing insurance policies, Becton settled the Stacys' claims for underinsurance motorist benefits. According to the Stacys, Becton presented to them one check amounting to $25,000.00, stating "this is all you can get. This is like the first settlement, the first

[$]100,000 you got ... This is what you're getting." The Stacys, believing Becton, took and deposited the check. When the Stacys later determined that Becton had deceived them as to the value of their case, they obtained new counsel, and on June 9, 2011, they filed suit against, *inter alia*, Witt for claims arising out of Witt's representation of the Stacys including attorney malpractice, negligent hiring, negligent supervision, and punitive damages.

During Witt's representation of the Stacys, Witt carried a "Lawyers' Professional Liability Insurance Policy" ("Policy"), issued by Bar Plan, which provided coverage limits of $500,000.00 for "Each Claim" and $1,500,000.00 in the aggregate. The Policy insured Witt for "all sums, subject to the Limit(s) of Liability, Exclusions and terms and conditions contained in [the] Policy," that Witt might become legally obligated to pay as damages resulting from "CLAIMS ... FIRST MADE AGAINST [Witt] ... by reason of any act or omission by [Witt]" while providing legal services in a professional capacity. (emphasis in original). The Policy defines "Claim" as "[r]eceipt by an Insured of a demand for money or services (including the service of suit or the institution of arbitration proceedings) against the Insured from one other than that Insured." The Policy excluded punitive damages in its "Exclusions" section, and its "Limits of Liability" section included the following pertinent clause, entitled "Multiple Insureds, Claims and Claimants" (the "MICC"):

> The demand for money or services by more than one person or Entity shall not operate to increase the Company's liability. Two or more demands arising out of a single act or omission or a series of related acts or omissions shall be treated as a single Claim.

To fulfill its obligations under the Policy, Bar Plan appointed and paid for an attor-

ney ("Appointed Counsel") to defend Witt in the Stacys' malpractice action. Per the MICC, Bar Plan alleges that, from the opening of its file in the matter, it did not view Mr. Stacy's causes of action separately from Mrs. Stacy's. Rather, it viewed the Stacys' matters collectively as one "Claim" as defined by the Policy because their demands arose out of a series of related acts of malpractice stemming from Witt's representation. To that end, Bar Plan considered its potential liability to the Stacys for Witt's actions capped at the limit for a single Claim, $500,000.00.

By letter dated August 24, 2011, the Stacys presented separate initial demands to settle their malpractice matters, with Mr. Stacy having demanded $500,000.00 and Mrs. Stacy having demanded $500,000.00. Both demands were rejected, however, and litigation continued for approximately two years with the trial set for October 7, 2013. On September 13, 2013, about three weeks before trial, the parties engaged in an ultimately unsuccessful mediation, and on that date, Bar Plan verbally acknowledged to the Stacys' counsel and to Appointed Counsel, for the first time, its "one-Claim" view of the Stacys' matters which limited its liability to $500,000.00. The Stacys contend that thereafter, they sent Bar Plan an updated demand within the Policy limits applicable to a single Claim. They further allege that despite Witt's permission to settle for the updated amount, Bar Plan rejected the new demand. Thereafter, Witt hired personal counsel and terminated Appointed Counsel on September 20, 2013 on the basis that Bar Plan failed to act in good faith to settle the Stacys' matter within the single-Claim Policy limits.

On September 23, 2013, Witt, through personal counsel, entered into a settlement agreement with the Stacys pursuant to Section 537.065 RSMo 2000[1]. Per the terms of the agreement, the Stacys proceeded to a bench trial on their malpractice matters, during which Witt neither appeared nor presented a defense, and on October 22, 2013, the Stacys received judgments in their favor on all causes of action ("Underlying Judgment"). To that end, Mrs. Stacy was awarded $400,000.00 in actual damages and $444,445.00 in punitive damages, and Mr. Stacy was awarded $50,000.00 in actual damages and $55,555.00 in punitive damages.

On November 22, 2013, after the Underlying Judgment became final, the Stacys filed the instant equitable garnishment action against Bar Plan as the Underlying Judgment remained unsatisfied. The Stacys' petition alleged that Bar Plan was unconditionally bound by its Policy to provide a defense for Witt because it did not proceed under a reservation of rights restricting its defense and indemnity obligations to the Policy limits applicable for a single Claim. Bar Plan, however, responded with affirmative defenses alleging that it was not bound by the Underlying Judgment against Witt. Specifically, Bar Plan asserted that Witt failed to cooperate by terminating Appointed Counsel, that he colluded with the Stacys to allow entry of a judgment exceeding the value of the actual damages, and that the Underlying Judgment exceeded the applicable policy limit at issue per the MICC and the Policy's prohibition against punitive damages.

On February 10, 2016, the Stacys filed their Motion and argued that Bar Plan was estopped from arguing that the Stacys' matters were subject to the MICC's one-

---

**1.** Unless otherwise indicated, all further statutory references are to RSMo. 2000 as amend-ed.

Claim limitation because Bar Plan failed to reserve any such coverage question by a reservation of rights notification. The Stacys further claimed that their matters were otherwise covered by the Policy under its aggregate limit of $1,500,000.00 because the term "related" as used in the MICC was ambiguous such that it should be construed against Bar Plan for a finding of coverage. While Bar Plan filed a response and memorandum in opposition to the Stacys' Motion, it did not file a cross-motion for summary judgment. In its response, Bar Plan argued that its one-Claim view was not a defense to coverage, but rather, was its adherence to the MICC's clear and unambiguous mandate defining the applicable and available coverage as that which would be provided under a single "Claim" since the Stacys' demands arose out of related acts of malpractice by Witt. Thus, Bar Plan alleged that the Stacys were inappropriately asserting estoppel to create coverage under a second "Claim" where no such coverage existed. Bar Plan further argued that it was not bound by the Underlying Judgment because Witt violated his obligations under the Policy by terminating Appointed Counsel such that Bar Plan was denied the opportunity to control the litigation.

On June 30, 2016, the trial court issued its Order, finding that Bar Plan was never obligated to communicate its one-Claim view to Witt because the MICC was a limit of liability available to Witt, not a defense to a claim of coverage. As such, the trial court concluded that Bar Plan's lack of communication to Witt on the matter could not mandate a "two-Claim" coverage view of the Stacys' malpractice actions because to do so would create coverage where none existed. The trial court, therefore, denied the Stacys' Motion.

On July 29, 2016 the Stacys, seeking to appeal, filed a "Motion to Amend the June 30, 2016 Order and to Denominate the Order as 'Judgment' Under Rule 74.01(a)," ("Motion to Denominate") which the trial court granted on August 1, 2016. The Stacys now appeal.

## Standard of Review

"The standard of review of appeals from summary judgment is essentially *de novo.*" State ex rel. Koster v. Olive, 282 S.W.3d 842, 846 (Mo. banc 2009) (citing ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993)). Summary judgment is "proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Rule 74.04(c)(6); Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 119-120 (Mo. banc 2010) (citing Larabee v. Eichler, 271 S.W.3d 542, 545 (Mo. banc 2008)). A reviewing court "accords the non-moving party the benefit of all reasonable inferences in the record." Id. (citing ITT, 854 S.W.2d at 376).

## Discussion

The Stacys raise a total of six points on appeal. Their first five points challenge the trial court's Order and contend that summary judgment should have been entered in their favor essentially because Bar Plan is bound by the Underlying Judgment. This is so, they assert, because Bar Plan did not offer to defend Witt under a reservation of rights as to its one-Claim view, and in failing to do so, Bar Plan forfeited its opportunity to control the litigation because its adherence to that view was, in effect, a denial of coverage as to any other applicable Claims. The Stacys further contend that the trial court erred in considering any of Bar Plan's arguments regarding how the MICC should be interpreted because Bar Plan made no effort to intervene in the underlying litiga-

tion, and therefore, its arguments constitute a collateral attack upon the Underlying Judgment. The Stacys' sixth point is a procedural challenge in which they argue that the trial court erred by entering rulings in favor of Bar Plan in its Order as this amounted to a grant of summary judgment in favor of Bar Plan who did not file its own motion as required by Rule 74.04. However, since the Stacys do not appeal from a final, appealable judgment, we have no authority to consider these arguments or to resolve these issues, and we dismiss this appeal.

■■■ "A trial court's overruling of a motion for summary judgment generally is not subject to appellate review." Bob De-George Associates, Inc. v. Hawthorn Bank, 377 S.W.3d 592, 598 (Mo. banc 2012) (citing Dhyne v. State Farm Fire and Cas. Co., 188 S.W.3d 454, 456 n.1 (Mo. banc 2006)). This is so "even when an appeal is taken from a final judgment and not from the denial of a motion for summary judgment." Hihn v. Hihn, 235 S.W.3d 64, 67 (Mo. App. E.D. 2007) (quoting Gilmore v. Erb, 900 S.W.2d 669, 671 (Mo. App. E.D. 1995)). This general rule exists because a "denial of a summary judgment motion is interlocutory and thus not a final appealable order." Cook's Fabrication & Welding, Inc. v. Mid-Continent Cas. Co., 364 S.W.3d 639, 646 (Mo. App. E.D. 2012). In other words, upon a ruling denying a motion for summary judgment, "the issues raised by the pleadings are still in the case . . . to be tried." Short v. Southern Union Co., 372 S.W.3d 520, 537 n.22 (Mo. App. W.D. 2012) (quoting Parker v. Wallace, 431 S.W.2d 136, 137-38 (Mo. 1968)). Our courts, however, do recognize a very limited exception to this general rule. A denial of a summary judgment motion "will *only* be reviewed when its merits are completely intertwined with a grant of summary judgment in favor of an opposing party." Iowa Steel & Wire Co., Inc. v. Sheffield Steel Corp, 227 S.W.3d 549, 558 (Mo. App. W.D. 2007) (citing Dhyne, 188 S.W.3d at 456 n.1) (emphasis in original).

■■■ Here, the Stacys appeal from the trial court's June 30, 2016 Order denying their Motion. Since a denial of a motion for summary judgment is interlocutory and generally unreviewable, the Stacys' arguments are reviewable only if, per the exception to the general rule, the merits of their Motion are intertwined with a grant of summary judgment to Bar Plan. However, while Bar Plan filed a response and memorandum in opposition to the Stacys' Motion, it never filed a cross-motion for summary judgment. The trial court, therefore, did not have the authority to grant summary judgment to Bar Plan, and the language of the Order does not support any assertion that it sought or attempted to do so. See Energy Creates Energy, LLC v. Heritage Group, 504 S.W.3d 142, 148-49 (Mo. App. W.D. 2016) (reversing grant of summary judgment where trial court did not require "strict adherence" to the mandatory procedural requirements of Rule 74.04, thereby producing record lacking statement of uncontroverted facts and response from non-moving party). In full, the operative language of the Order provides only, "[i]t is the Order of the court that the Plaintiffs' Motion for Summary Judgment is hereby DENIED," making no mention of any grant of summary judgment to Bar Plan. Absent such a grant to Bar Plan, the exception to the rule prohibiting review of a denial of summary judgment is inapplicable. Thus, since the Stacys' points on appeal "only claim[ ] error in the denial of their motion for summary judgment under circumstances that do not invoke the limited exception where an inextricably interwoven cross-motion for summary judgment has been granted, the point[s] relied on preserve[ ] nothing for

appellate review." McGathey v. Matthew K. Davis Trust, 457 S.W.3d 867, 877 (Mo. App. W.D. 2015).

Nevertheless, the Stacys, in a memorandum addressing appealability submitted to this Court, argue that the denial of their Motion is appealable because the trial court, on August 1, 2016, granted the Stacys' Motion to Denominate, and they argue that the effect of the Order coupled with its denomination as "Judgment" "effectively constitute[d] summary judgment in favor" of Bar Plan. This argument is unavailing. "It is the content, substance, and effect of the order that determines finality and appealability." G.K.S. v. Staggs, 452 S.W.3d 244, 251 (Mo. App. W.D. 2014) (quoting Gibson v. Brewer, 952 S.W.2d 239, 244 (Mo. banc 1997)).

Here, the plain language of the Order negates the Stacys' assertion that it effectively granted summary judgment to Bar Plan. First, the Order "makes no reference ... to a cross-motion for summary judgment" filed by Bar Plan and "does not purport to grant summary judgment in favor of [Bar Plan], no doubt because [Bar Plan] never filed a cross-motion for summary judgment." McGathey, 457 S.W.3d at 876. Nor was the Order converted to a final, appealable judgment by the mere denomination "Judgment" as it contained no explicit finding, either before or after the trial court granted the Motion to Denominate, as to whether Bar Plan was liable to the Stacys on their equitable garnishment claim. See Carter v. Shelter Mutual Insurance Company, 459 S.W.3d 469, 470-71 (Mo. App. E.D. 2015) (order denying summary judgment not final and appealable despite trial court's granting plaintiff's "Motion to Designate Order as Judgment and Certify judgment as Final" as order did not enter judgment regarding liability on any count of plaintiff's petition). Absent a finding as to liability on the Stacys' equitable garnishment claim, the Order did not enter judgment on any count raised in the Stacys' petition. As such, "[t]he content, substance, and effect of the trial court's [O]rder belies the conclusion that it was a final judgment," and the issues raised by the Stacys in their petition remain in this case to be tried. G.K.S., 452 S.W.3d at 251; see also Short, 372 S.W.3d at 537 n.22.

Since the Stacys appeal from the trial court's denial of their Motion, which sought summary judgment in their favor, they do not appeal from a final judgment, and this Court, therefore, lacks the authority to resolve this appeal.

### Conclusion

The appeal is dismissed.

Robert M. Clayton III, Presiding Judge, and Lisa P. Page, Judge, concur.