

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| **BOYD MCGATHEY, ET AL.,** | ) | |
| | ) | |
| **Respondents,** | ) | **WD77437** |
| | ) | |
| **v.** | ) | **OPINION FILED: February 3, 2015** |
| | ) | |
| **MATTHEW K. DAVIS TRUST,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Edith Messina, Judge

Before Division Three: Karen King Mitchell, Presiding Judge, Cynthia L. Martin, Judge
and Gary D. Witt, Judge

This is an appeal from a judgment entered in a garnishment proceeding which ordered garnishees Roger Hoyt ("Hoyt") and Country Club Trust Company, N.A. ("Country Club Trust Company") (collectively the "MKD Trustees"), in their capacity as the trustees of the Matthew K. Davis Trust ("MKD Trust"), to pay $105,000 into the Court following the determination of exceptions to garnishment interrogatory answers filed by Boyd McGathey and Debra Augustine (collectively "Garnishors"). The MKD Trustees argue that the trial court erred in denying their motion for summary judgment addressing Garnishors' exceptions.

Because the MKD Trustee's point relied on preserves nothing for our review, we dismiss this appeal.

**Factual and Procedural History**

On September 12, 2007, Garnishors won a $500,000 judgment against Matthew K. Davis ("Davis") following a jury trial. While trying to satisfy the judgment, Garnishors learned that Davis was the beneficiary of two trusts: the May Development Trust ("May Trust") and the MKD Trust. Davis's father ("Grantor") created the trusts in a single Trust Agreement which provides the terms for each trust.[1]

Article III of the Trust Agreement addresses the May Trust and provides that the May Trust shall hold and administer May Development Company stock and real estate--a building and parking lot--located at 4325 Troost (the "May Trust Assets") for a period of up to fifteen years after the Grantor's death. May Development Company employee Jim Henson ("Henson") was named the initial trustee of the May Trust. Article III, Section B, of the Trust Agreement requires Henson to make monthly payments to Davis "during the life of the trust" in an amount equal to the monthly rental income generated from the building and parking lot less any taxes due from either the May Trust or Davis (the "Mandatory Distribution"). After taxes, the Mandatory Distribution totaled $5,000 each month. Article III, Section C, of the Trust Agreement provides in pertinent part that "[u]pon the death or resignation or failure to act hereunder of Jim Henson, [the May

---

[1]The Trust Agreement also created three other trusts that are not the subject of this appeal. The Trust Agreement contains some articles that apply to specific trusts and other articles that apply to all trusts.

Trust] shall be merged into and be operated as a part of the [MKD Trust] under Article V [of the Trust Agreement]."

Article V of the Trust Agreement addresses the MKD Trust and provides that the MKD Trust will hold the remainder of the Grantor's "trust estate" (the "MKD Trust Assets"). The Trust Agreement names Hoyt and Country Club Trust Company as the MKD Trustees. Article V provides in pertinent part:

> The [MKD] Trustee, in its sole discretion, may make distributions to or for the benefit of Matthew K. Davis only at such times the rental income equivalent from the property located at 4325 Troost and its adjacent parking lot are not being made or are insufficient to attend to health, education, maintenance, and support of Matthew K. Davis. In such event, the discretionary payments shall not exceed the greater of the trust income or five thousand dollars ($5,000) per month.

Article V thus permits the MKD Trustees to make discretionary distributions to Davis from the MKD Trust Assets, but only if the Mandatory Distribution from the May Trust is not being made or is insufficient to support Davis. Article V does not explain the circumstances that could give rise to the Mandatory Distribution "not being made."

Article VIII, which applies to both the May Trust and the MKD Trust, contains a spendthrift clause that provides:

> To the extent permitted by law, none of the beneficiaries hereunder shall have any power to dispose of or to charge by way of anticipation or otherwise any interest given to such beneficiary; and all sums payable to any beneficiary hereunder shall be free and clear of debts, contracts, alienations and anticipations of such beneficiary, and of liabilities for levies and attachments and proceedings of any kind, at law or in equity. . . .

Article IX, which also applies to both the May Trust and the MKD Trust, includes a resignation clause that provides "[a]ny Trustee at any time acting hereunder is authorized

3

to resign from that office at any time, without any reason, by delivering an acknowledged instrument to that effect to the adult or otherwise legally competent beneficiaries. . . ." The Trust Agreement defines "acknowledged instrument" as "a written instrument executed in the presence of two subscribing witnesses, or otherwise acknowledged or proved with the formalities required to permit recording of a deed of real property in the State in which Grantor is domiciled at his death."

From March 25, 2011, to November 22, 2011, Garnishors requested that Writs of Garnishment with interrogatories be issued to Henson in his capacity as trustee of the May Trust. Garnishors were successful in capturing four Mandatory Distributions to Davis, totaling $20,000.

On March 16, 2012, Garnishors requested that another Writ of Garnishment with interrogatories be issued to Henson. Henson then sent a letter to the MKD Trustees dated April 30, 2012, stating that he was resigning as trustee of the May Trust effective immediately.[2] Henson thereafter answered the interrogatories and informed Garnishors that he had resigned as trustee of the May Trust on April 30, 2012.

On June 4, 2012, Garnishors requested that another Writ of Garnishment with interrogatories be issued to Henson. Henson answered the interrogatories by stating that the May Trust had ceased to exist. Garnishors filed exceptions to Henson's interrogatory answers arguing that the May Trust had not ceased to exist and that the May Trust Assets remained in the May Trust. On November 20, 2012, Henson filed a reply, arguing that he

---

[2]There appears to be no dispute between the parties that this resignation did not comply with the technical requirements of Article IX of the Trust Agreement, although the parties do dispute the effect of noncompliance on the continued independent existence of the May Trust.

resigned as trustee on April 30, 2012, and that the May Trust terminated upon his resignation.

On August 15, 2012, Garnishors began requesting the issuance of periodic Writs of Garnishment to the MKD Trustees. Those requests have continued to this date. In each case, the MKD Trustees have answered the garnishment interrogatories by stating that the May Trust Assets are now MKD Trust Assets by virtue of merger of the trusts following Henson's resignation; and that as a result, the only distributions that can be made to Davis are discretionary distributions pursuant to Article V of the Trust Agreement that cannot be garnished as a matter of law. Garnishors have filed exceptions to the MKD Trustees' interrogatory responses which argue that the May Trust continues to exist as an independent trust, even though it is now being administered by the MKD Trustees, and that the Mandatory Distributions to Davis must still be made.

On September 5, 2013, the MKD Trustees filed a motion for summary judgment in an effort to resolve all pending garnishments. The motion argued that the May Trust Assets merged into the MKD Trust as of April 30, 2012, and were to be administered thereafter under Article V of the Trust Agreement, which only permits discretionary distributions that cannot be garnished as a matter of law.

Garnishors argued in response to the motion for summary judgment that Henson's resignation on April 30, 2012, did not comply with the terms of the Trust Agreement and was not legally effective to cause the May Trust to merge with the MKD Trust, requiring continued payment of the Mandatory Distributions by whomever has control of the May

5

Trust Assets, whether that be Henson or the MKD Trustees.[3] Garnishors alternatively argued that even if the May Trust and the MKD Trust merged on April 30, 2012, the Grantor did not intend merger to terminate the May Trust but instead intended the May Trust to be administered by the MKD Trustees, requiring the Mandatory Distributions to continue.

The MKD Trustees argued in reply that even if Henson's resignation failed to comply with the procedures described in the Trust Agreement, the resignation constituted Henson's "failure to act," a separate trigger for merger of the May Trust into the MKD Trust pursuant to Article III, Section C, of the Trust Agreement. The MKD Trustees also disagreed with Garnishors' contention that the Grantor did not intend merger of the trusts to terminate the May Trust.

The summary judgment pleadings thus framed three issues: (1) whether Henson's April 30, 2012 resignation was effective to trigger merger of the May Trust into the MKD Trust pursuant to Article III, Section C, of the Trust Agreement; (2) whether Henson's April 30, 2012, resignation, if not effective to trigger merger, constituted a failure to act that triggered merger of the May Trust into the MKD Trust pursuant to Article III, Section C, of the Trust Agreement; and (3) whether merger of the May Trust into the MKD Trust terminated the May Trust and the corresponding obligation to make

---

[3]Consistent with this position, Garnishors have continued, to this date, to request that Writs of Garnishment be periodically issued to Henson.

Mandatory Distributions or instead merely shifted the obligation to administer the May Trust to the MKD Trustees.[4]

On December 2, 2013, the trial court conducted a hearing in which Garnishors and the MKD Trustees participated.[5] The trial court issued a judgment on January 31, 2014. On February 28, 2014, the trial court issued an amended judgment ("Judgment"). The Judgment held that after considering the pleadings associated with the MKD Trustees' motion for summary judgment (which the Judgment itemized), oral arguments and post-trial briefing, the motion for summary judgment was denied. The Judgment further held that:

> Judgment is entered in favor of Plaintiffs and against Garnishees Country Club Trust Company, N.A. and Roger Hoyt, pursuant to Rule 90.10(b)[6] in the amount of $105,000 to be paid into Court within thirty (30) days of the date of this Amended Judgment. This judgment shall bear interest from and after January 31, 2014 at 5.25% per annum pursuant to R.S.Mo. § 408.040.2.

---

[4]Garnishors do not appear to contest that if merger of the trusts terminated the May Trust and the corresponding obligation to make the Mandatory Distribution, they cannot garnish the MKD Trustees as discretionary distributions cannot be reached by garnishment with limited exceptions not applicable to this case. *See* section 456.5-502.

[5]Shortly before this hearing, the trial court set aside an order it had earlier entered granting Henson's motion for summary judgment on Garnishors' exceptions to Henson's interrogatory answers. Henson's pending motion for summary judgment was not, however, argued during the December 2, 2013, hearing, and, according to Case.net, remains pending. However, as the garnishments served on Henson are separate and distinct from the garnishments served on the MKD Trustees, the still pending dispute between Garnishors and Henson does not impact the finality of the dispute between Garnishors and the MKD Trustees, even though the bases for taking exception to the interrogatory responses filed by Henson and the MKD Trustees are factually interrelated. The MKD Trustees and Garnishors did enter into a Stipulation that is a part of the record on appeal agreeing that should the trial court find that Henson's April 30, 2012, resignation was not legally effective, Henson would be treated as having resigned on December 2, 2013.

[6]All Rule references are to *Missouri Court Rules, Volume I-State, 2014*. The version of Rule 90 adopted in 1999 remains in effect today and controls the Writs of Garnishment issued to the MKD Trustees.

7

The amount of the Judgment represents the $5,000 Mandatory Distribution multiplied by 21 months--the period between May 1, 2012 (the day after Henson's resignation letter) and January 31, 2014 (the date of the trial court's original judgment).

Trustees appeal from the Judgment, setting forth a single point of error.

**The Finality of the Judgment for Purposes of Appeal**

"This court has a duty to determine *sua sponte* whether we have jurisdiction to review an appeal." *Rocking H Trucking, LLC v. H.B.I.C., LLC*, 427 S.W.3d 891, 895 (Mo. App. W.D. 2014). The right of appeal is purely statutory. *Farinella v. Croft*, 922 S.W.2d 755, 756 (Mo. banc 1996). In this case, the right of appeal is controlled by Section 512.020 which provides in pertinent part that:

> Any party to a suit aggrieved by any judgment of any trial court in any civil cause from which an appeal is not prohibited by the constitution, nor clearly limited in special statutory proceedings, may take his or her appeal to a court having appellate jurisdiction from any:
>
> . . .
>
> (5) Final judgment in the case or from any special order after final judgment in the cause . . .

A special order after final judgment includes "'orders in special proceedings attacking or aiding the enforcement of [a] judgment after it has become final in the action in which it was rendered.'" *State ex rel. Koster v. Cain*, 383 S.W.3d 105, 111 (Mo. App. W.D. 2012) (quoting *GUI, Inc. v. Adams*, 978 S.W.2d 515, 517 (Mo. App. W.D. 1998)).

Though garnishment proceedings aid in the enforcement of a judgment, and are thus special proceedings within the ambit of section 512.020, not every order issued in a garnishment proceeding is a special order that can be appealed. "Only after a final

8

judgment is entered in a garnishment action does an appeal lie." *Division of Employment Security v. Cusumano*, 785 S.W.2d 310, 312 (Mo. App. E.D. 1990). The principle that "a final, appealable judgment is ordinarily one that disposes of all parties and all the issues in the case" is "as applicable to garnishment cases as to others." *Orf v. Computer Institute*, 480 S.W.2d 73, 74 (Mo. App. 1972). "Orders or judgments [in garnishment proceedings] which leave some further question or direction for future determination are interlocutory and not final and appealable." *S.A. v. Jodoin*, 861 S.W.2d 810, 813-14 (Mo. App. 1993) (citation omitted).

Here, the Judgment was the *in rem* "pay in" order anticipated by Rule 90.10(b) resolving a garnishor's exceptions to a garnishee's interrogatory answers. *Cusumano*, 785 S.W.2d at 312 (holding that "[g]arnishment is a proceeding *in rem* that brings within the jurisdiction and power of the court a debt or chose in action and impresses it with the lien of the judgment in aid of execution"). The Judgment determined whether property was subject to garnishment and ordered that property to be paid in to the court within a specified time frame. *See* Rule 90.10(b). The MKD Trustees have not complied with the pay in order. Rule 90.10(b) provides that where a garnishee fails to pay in an amount ordered following a Rule 90.10(b) trial resolving exceptions to garnishment interrogatories, the trial court "may enter judgment against the garnishee."[7] Here, the

---

[7]The Judgment could be mistaken as an *in personam* judgment, as it purports to enter judgment against the MKD Trustees at the same time it identifies property subject to garnishment and orders that property to be paid in to the court. However, a trial court has no authority under Rule 90.10(b) to enter an *in personam* judgment against a garnishee until the garnishee is ordered, and then fails, to abide by an *in rem* pay in order. Rule 90.10(b). *See Schlingman v. Reed*, 750 S.W.2d 501, 503 (Mo. App. W.D. 1988) (acknowledging that a trial court cannot enter a personal judgment against a garnishee before affording a garnishee the opportunity to abide by an interlocutory "pay in" order). We thus read the Judgment in conformance with the law as the *in rem* "pay in" order authorized by Rule 90.10(b).

9

trial court has not entered the *in personam* judgment authorized by Rule 90.10(b) against the MKD Trustees. Instead, the MKD Trustees have appealed the *in rem* pay in order.

Ordinarily, a Rule 90.10(b) pay in order is an interlocutory order from which no appeal can be taken. *Hill, Lehnen & Driskill v. Barter Systems, Inc.*, 707 S.W.2d 484, 486 (Mo. App. W.D. 1986) ("The order directing the garnishee to pay or deliver the garnished funds or property to the court is interlocutory."); *Seiter v. Tinsley*, 479 S.W.2d 217, 218 (Mo. App. 1972) (holding that order to pay money into court is an interlocutory order required the garnishment rule, and is the "prerequisite to entering a final judgment against the garnishee . . . [b]ut it is not a final judgment from which an appeal lies"). The MKD Trustees argue, however, that they can appeal the pay in order (and stave off entry of an *in personam* judgment against them) because they attached a bond in the amount of $125,000 to their notice of appeal.

Rule 90.10(b) makes no provision for posting a bond in lieu of abiding by a pay in order following resolution of exceptions to garnishee interrogatory answers. It provides, in pertinent part, that:

> [T]he court or jury shall determine all controverted issues raised by garnishor's exceptions to the garnishee's answers to interrogatories, the garnishee's response thereto, and any claim asserted by a third party who has intervened. The court shall enter judgment in accordance with the findings of the court or jury and shall order any property not previously delivered to the officer or the court be delivered to the officer or paid into court within such time as the court shall direct. ***If the property is not delivered to the officer or paid into court within such time***, the court ***may enter judgment against the garnishee*** for the value of the property.

10

(Emphasis added.)   Though Rule 90.10(b) is silent on the subject of bonds in lieu of

abiding by pay in orders, section 525.200[8] provides, in pertinent part, that:

> If, upon such trial, [referring to the trial to resolve exceptions to garnishments anticipated by Rule 90.10(b)], it shall appear that property . . . of the defendant [is] found in the hands of the garnishee, the court or jury shall find what property . . . [is] in his hands, and **unless he discharge himself** as provided in section 525.070, **by paying or delivering the same** to the sheriff, or unless he shall, with such time as the court shall direct, as provided in section 525.080, pay or deliver up such property, . . . **or shall execute his bond for the payment or delivery thereof**, then the court **shall enter up judgment against the garnishee** for the proper amount or value as found in money, and execution may issue forthwith to enforce such judgment.

(Emphasis added.)

At first blush, Rule 90.10(b) appears to be in conflict with Chapter 525.200 as: (a)

the Rule does not expressly permit the posting of a bond in lieu of delivery of property

ordered to be paid in following a trial to resolve exceptions;[9] and (b) the Rule permits,

but does not mandate, the entry of an *in personam* judgment against a garnishee who fails

to pay in as ordered.   However, any apparent conflict can be resolved by reference to

section 525.120, which provides that the Supreme Court can prescribe rules relating to

garnishment procedures "where the same are not prescribed by law."   We are thus

required to read Rule 90.10(b) and section 525.200 in harmony to afford a garnishee the

---

[8]All statutory references are to RSMo 2000, as supplemented, unless otherwise noted.  Chapter 525 addresses garnishment and has remained materially unchanged since 1939.  Rule 90 in effect prior to 1981 largely tracked Chapter 525.  There have been three amendments to Rule 90 since then (in 1981, 1988 and 1999).  The amendments have increasingly strayed from the template of Chapter 525.  We have not undertaken to compare Chapter 525 to the current version of Rule 90 except as is relevant to the discussion of finality of the Judgment for purposes of appeal.

[9]Earlier versions of Rule 90 expressly permitted the posting of a bond in lieu of abiding by a pay in order issued by the court. *See, e.g*., Rule 90.07 (in effect prior to 1981) which mirrored the language of section 525.200. The current version of Rule 90 permits the posting of a bond, but only where a garnishor has secured a Rule 90.05 order for "immediate" (i.e. emergent) delivery of property where there is a danger of losing the property unless immediate delivery is made. *See* Rules 90.05, 90.06.

11

option to *either* abide by a pay in order (as permitted by both Rule 90.10(b) and section 525.200), *or* post a bond to insure later payment or delivery of the property subject to garnishment (as permitted by section 525.200), and should *neither* action be taken, then an *in personam* judgment *shall* be entered against the garnishee (as provided by section 525.200).

We conclude, therefore, that if the bond authorized by section 525.200 is posted in lieu of abiding by a pay in order, the pay in order becomes a final appealable judgment. Our conclusion is in keeping with "[t]he recognized purpose of a supersedeas bond . . . to stay the execution of enforcement, pending the appeal, of an order or judgment which commands or permits some act to be done, or which is of a nature to be actively enforced against the party affected. . . ." *In re Marriage of Smith*, 721 S.W.2d 782, 784 (Mo. App. 1986) (citation omitted). In fact, we can conceive of no purpose for permitting a garnishee to bond over a pay in obligation unless it is to permit the garnishee to appeal the pay in order. Without the ability to file a bond in lieu of abiding by a pay in order, a garnishee would be left with but two difficult choices: *either* discharge the garnishee's liability by complying with the pay in order, thus mooting any appeal, (*Cusumano*, 785 S.W.2d at 313 (observing that "garnishee [is] discharged from further liability to [garnishor] by payment into court of the property garnished . . ."); *or* ignore the pay in order and risk the entry of an *in personam* judgment enforceable from the garnishee's assets, but from which an appeal can be taken. The statutory ability to post a bond in lieu of pay in effectively protects the interests of the garnishor while permitting the garnishee to appeal the interlocutory *in rem* pay in order.

12

We do observe that the MKD Trustees failed to comply with the requirements of section 525.080 in posting their bond.  Section 525.080.1 provides that the trial court "*may permit* the garnishee to retain [property ordered to be delivered or paid in], upon his or her executing a bond to the [garnishor], with security, *approved by the court* . . . ." (Emphasis added.)  Section 525.080.1 thus plainly renders the ability to post a bond in lieu of abiding by a pay in order discretionary with the trial court and requires the trial court to approve the amount of and security for the bond.  The MKD Trustees unilaterally attached a bond to their notice of appeal.  They did not secure authorization from the trial court to do so in lieu of abiding by the pay in order, and they did not secure trial court approval of the amount of or security for the bond.  However, the Garnishors have not objected to the bond on these or any other bases.  The MKD Trustees' noncompliance with the technical requirements of section 525.080.1 does not, therefore, affect our conclusion that the bond renders the Judgment final for purposes of appeal.

**The MKD Trustees' Point Relied On Preserves Nothing For Appellate Review**

The MKD Trustees' single point relied on, which contains four subparts, asserts only that the trial court erred by denying their motion for summary judgment. "Generally, the denial of a motion for summary judgment is not a final judgment that may be reviewed on appeal." *Herring v. Prudential Prop. & Cas. Ins. Co.*, 96 S.W. 3d 893, 894 (Mo. App. W.D. 2002); *see also Wilson v. Hungate*, 434 S.W.2d 580, 583 (Mo. 1968) (holding that the denial of a summary judgment motion is interlocutory, and thus not a final appealable order).  There is a limited exception to this rule.  "When the merits of that motion . . . are inextricably intertwined with the issues in an appealable summary

13

judgment in favor of another party, then that denial may be reviewable." *Lopez v. American Family Mut. Ins. Co.*, 96 S.W.3d 891, 892 (Mo. App. W.D. 2002).

The MKD Trustees argue that the Judgment, which not only denied their motion for summary judgment, but which also entered judgment in favor of the Garnishors "pursuant to Rule 90.10(b)," should be construed as the grant of summary judgment in favor of the Garnishors. The MKD Trustees thus ask us to consider their point on appeal as falling within the limited exception permitting appellate review of a denied motion for summary judgment.

The MKD Trustees' request is negated by the plain language of the Judgment. The Judgment entered judgment in favor of the Garnishors "pursuant to Rule 90.10(b)." The Judgment also denied the MKD Trustees' motion for summary judgment and expressly lists the summary judgment pleadings considered in connection with that ruling. The Judgment makes no reference, however, to a cross-motion for summary judgment filed by the Garnishors and does not purport to grant summary judgment in favor of the Garnishors, no doubt because the Garnishors never filed a cross-motion for summary judgment.

The MKD Trustees nonetheless argue that we should rewrite the Judgment to correspond with a Stipulation entered into by the parties. We disagree. At the beginning of the December 2, 2013, hearing, the parties informed the trial court that they had entered into a Stipulation agreeing to treat Garnishors' suggestions in opposition to the MKD Trustees' motion for summary judgment as a cross-motion for summary judgment. However, the Garnishors explained that despite the Stipulation, they were reluctant to

14

presume that the parties had the right to waive the requirements of Rule 74.04 regarding the filing of motions for summary judgment. The Garnishors expressed concern that notwithstanding the Stipulation, they would not be treated as having filed a cross-motion for summary judgment. Thus, the Garnishors advised the trial court that the Stipulation also included a provision permitting the introduction of evidence and legal arguments during the December 2, 2013, hearing that had not been raised in, nor attached to, any of the summary judgment pleadings. Consistent with this Stipulation, the MKD Trustees argued during the hearing that even if the obligation to make Mandatory Distributions survived merger of the trusts, section 456.5-506 prohibits reaching mandatory distributions by garnishment.[10] This statute was not raised in the MKD Trustees' summary judgment motion as the basis for entering judgment as a matter of law. Also consistent with the Stipulation, the trial court admitted deposition testimony presented by the Garnishors, though that evidence was not attached to any of the summary judgment pleadings. The parties' statements and conduct during the December 2, 2013, hearing manifest the intent and expectation that the trial court would use the hearing to resolve the exceptions filed by the Garnishors to the MKD Trustees' garnishment interrogatory answers as required by Rule 90.10(b).

Consistent with this intent, both parties submitted "post-trial briefs" to the trial court after the hearing, along with proposed forms of judgment. The MKD Trustees included with their filings documents suggesting that possession and control over the

_____

[10]Section 456.5-506.2 provides that "[w]hether or not a trust contains a spendthrift provision, a creditor or assignee of a beneficiary may reach a mandatory distribution of income or principal, including a distribution upon termination of a trust, if the trustee has not made the distribution to the beneficiary within a reasonable time after the required distribution."

15

May Trust Assets had been transferred to the MKD Trustees to the exclusion of Henson as of April 30, 2012. Those documents were not introduced into evidence during the hearing, and were not attached to any of the summary judgment pleadings. Their submission to the trial court for consideration manifests, however, the MKD Trustees' expectation that the trial court would be fully resolving the Garnishors' exceptions to their interrogatory answers. The trial court thereafter entered its Judgment doing just that. The Judgment denied the only motion pending before the trial court (the MKD Trustees' motion for summary judgment) and resolved the Garnishors' exceptions to the MKD Trustees' interrogatory answers as required by Rule 90.10(b).

We cannot construe the Judgment to grant an unfiled cross-motion for summary judgment. Even were we inclined to do so (which we are not), the Garnishors' suggestions in opposition to the MKD Trustees' motion for summary judgment urged judgment in favor of the Garnishors on wholly different legal and factual grounds that are not inextricably interwoven with the basis for judgment argued in the MKD Trustees' motion for summary judgment. The MKD Trustees' motion argued only that the May Trust and the MKD Trust merged as of April 30, 2012, and that the May Trust was thus to be thereafter administered pursuant to Article V of the Trust Agreement, which only permits discretionary distributions that cannot be garnished as a matter of law pursuant to section 456.5-504. In response, the Garnishors argued: (i) there was never a merger because Henson did not properly resign; and (ii) even if there was a merger, the Grantor did not intend that to cease the obligation to make the Mandatory Distributions required by the May Trust. Then, in response to these arguments, the MKD Trustees raised new

16

arguments *beyond the scope of their motion for summary judgment* that: (i) even if Henson did not effectively resign, he "failed to act" as of April 30, 2012, an independent trigger for merger; and (ii) that section 456.5-507 prohibits reaching mandatory distributions by garnishment. This is simply not a case where denial of the MKD Trustees' limited motion for summary judgment would lead directly to the conclusion that the Garnishors' "cross-motion," (framed by its suggestions in opposition), would be correspondingly granted.

Because the MKD Trustees' point relied on only claims error in the denial of their motion for summary judgment under circumstances that do not invoke the limited exception where an inextricably interwoven cross-motion for summary judgment has been granted, the point relied on preserves nothing for appellate review.

This is not a case where we are inclined to exercise our discretion to cure a material defect in a point relied on by reference to the argument portion of the appellant's brief. Even were we to rewrite the MKD Trustees' point relied to claim error in the entry of judgment following trial in favor of the Garnishors, a claim of error that would be subject to a deferential standard of review,[11] we would nonetheless be required to dismiss this appeal because the argument portion of the MKD Trustees' Brief fails to challenge each ground on which the trial court could have ruled in the Garnishors' favor. *City of Peculiar v. Hunt Martin Materials, LLC*, 274 S.W.3d 588, 590-91 (Mo. App. W.D. 2009)

---

[11]On appeal from a judgment in a court-tried case, we view the facts in the light most favorable to the judgment. *White v. Dir. of Revenue*, 321 S.W.3d 298, 302 (Mo. banc 2010). In contrast, we review the grant of summary judgment *de novo*, viewing the record in the light most favorable to the party against whom summary judgment has been entered. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452-53 (Mo. banc 2011) (citations omitted). In their Brief, the MKD Trustees rely on the standard of review applicable to summary judgment motions, further underscoring the defective nature of their point relied on.

17

(holding that to establish grounds for reversal, an appellant must challenge all grounds on which the trial court could have ruled against it); *Houston v. Roadway Express, Inc.*, 133 S.W.3d 173, 178 (Mo. App. S.D. 2004) (holding that express and implied findings left unchallenged on appeal result in waiver of claim of error).

The Judgment did not make findings of fact or conclusions of law, and none were requested. Where "neither party requested and the trial court did not make specific findings of fact and law, the trial court is assumed to have made findings consistent with the judgment issued." *Pride v. Lewis*, 179 S.W.3d 375, 378 (Mo. App. W.D. 2005). The Judgment ordered the MKD Trustees to pay in $105,000, an amount equal to the Mandatory Distributions from the May Trust for the period from May, 1, 2012 through January 31, 2014. The trial court thus necessarily found that the MKD Trustees had "control or custody" of property (the Mandatory Distributions for said period of time) "belonging to debtor" (Davis). *See* Rule 90.02(c). To find that the MKD Trustees had "control or custody" of the May Trust Assets, and thus of the Mandatory Distributions, the trial court had to find *either* (i) that the May Trust and the MKD Trust merged on April 30, 2012 because Henson resigned or "failed to act" as anticipated by Article III, Section C of the Trust Agreement, placing the MKD Trustees in control of the merged trusts per Article V of the Trust Agreement, *or* (ii) that Henson's actions on April 30, 2012 were neither an effective resignation nor failure to act, and that no merger of the trusts occurred, though the MKD Trustees have thereafter exercised "control and custody" over the May Trust Assets.

18

Read as generously as the argument portion of their appellate brief could possibly permit, the MKD Trustee's point relied on (and its four subparts) claim error in the entry of judgment in favor of the Garnishors because: (A) both the May Trust and the MKD Trust include spendthrift provisions which prohibit execution of trust assets; (B) the MKD Trust permits only discretionary distributions that cannot be garnished pursuant to section 456.5-504; (C) the May Trust merged into the MKD Trust and ceased to exist on April 30, 2012 when Henson resigned, and even if the resignation was ineffective, merger was triggered by Henson's failure to act; and (D) the Grantor intended merger of the trusts to render all subsequent distributions discretionary.

Notably missing from these challenges to the Judgment is any claim of error in the possible finding that the trusts never merged but that the MKD Trustees nonetheless took "custody or control" of the May Trust Assets as of April 30, 2013, though not authorized to do so by the Trust Agreement. The failure to challenge this potential ground for the trial court's judgment would be fatal to the MKD Trustees' appeal, even were we inclined to rewrite the defective point relied on.[12] *City of Peculiar*, 274 S.W.3d at 590-91; *Houston*, 133 S.W.3d at 178.

Moreover, if we assume that the trial court found a merger of the trusts occurred on April 30, 2012, then in order to find that Mandatory Distributions due between May 1, 2012 and January 30, 2014 were subject to garnishment, the trial had to have found *both*:

---

[12]On this point, we note the parties' Stipulation includes a provision that Henson's resignation will be deemed effective as of the date of the December 2, 2013, hearing should the trial court find it not to be effective as of April 30, 2012. Thus, for garnishments that have been issued since the date of the Judgment, it is no longer in dispute that the two trusts "merged" at least as of that date, though the effect of merger on the continuing obligation to make the Mandatory Distributions remains in dispute.

(i) that the Grantor did not intend merger of the trusts to extinguish the Mandatory Distribution obligation; and (ii) that section 452.5-506 permits garnishment of the Mandatory Distributions due during those months notwithstanding the spendthrift provision in the Trust Agreement.[13] The MKD Trustees argue that the Mandatory Distributions did not survive merger of the trusts, and that even if they did, they were subject to a spendthrift provision. However, their appellate brief does not challenge an alternative ground supporting the Judgment: that the Mandatory Distributions survived merger, and that, *notwithstanding the spendthrift provision*, the distributions due between May 1, 2012, and January 30, 2014, were subject to garnishment pursuant to section 452.5-506 because they were not made within a reasonable period of time. Once again, the failure to challenge an alternative ground supporting the Judgment would be fatal to the MKD Trustees' appeal, even presuming we were inclined to rewrite the defective point relied on. *City of Peculiar*, 274 S.W.3d at 590-91; *Houston*, 133 S.W.3d at 178.

## Conclusion

The appeal is dismissed.[14]

_____
Cynthia L. Martin, Judge

All concur.

---

[13]Recall that section 452.5-506 permits the attachment of mandatory distributions "[w]hether or not a trust contains a spendthrift provision, . . . *if the trustee has not made the distribution to the beneficiary within a reasonable time after the required distribution*." (Emphasis added.)

[14]The parties filed three motions during this appeal which were taken with the case: (i) Garnishors' motion to dismiss on the grounds that the MKD Trustees' point relied on preserved nothing for our review and because of other alleged Rule 84 violations; (ii) the MKD Trustees' motion for allowances and for remand to award fees and costs; and (iii) MKD Trustees' motion to amend their previous motion for allowances and for remand to award fees and costs. The motions are denied as moot in light of our Opinion.