

# In the
# Missouri Court of Appeals
# Western District

FRANKLIN D. ALLEN,

         Appellant,

v.

ATAIN SPECIALTY INSURANCE
COMPANY,

         Respondent.

WD81677

OPINION FILED:

JUNE 18, 2019

Appeal from the Circuit Court of Jackson County, Missouri
The Honorable John M. Torrence, Judge

Before Division Three: Mark D. Pfeiffer, Presiding Judge, Lisa White Hardwick, Judge,
Anthony Rex Gabbert, Judge

## INTRODUCTION

Appellant Franklin D. Allen appeals the trial court's order and judgment which held that the court lacked jurisdiction to address alleged unresolved claims in Allen's garnishment action against Atain Specialty Insurance Company (hereinafter "Atain"). In his sole point on appeal, Allen claims the circuit court erred in finding that a Supreme Court mandate addressing his garnishment claim for a wrongful refusal to defend left it with no jurisdiction to address bad faith claims in that garnishment action. We affirm.

**BACKGROUND**

In 2012, Wayne Bryers, acting in his capacity as a property manager and armed security guard, was escorting Franklin Allen off of the premises of Sheridan Apartments. Bryers accidentally shot Allen, severing Allen's spinal cord and rendering him a paraplegic. Allen brought a suit for damages which eventually resulted in a $16 million judgment against Bryers.

Atain was the insurer for Mr. Bryers's employer, Sheridan Apartments. During the initial lawsuit between Allen and Bryers, Atain declined to defend Bryers and filed multiple declaratory judgment actions seeking a declaration stating that the insurance policy did not offer Bryers coverage. Atain abandoned its declaratory judgment actions and never obtained a declaration releasing it from its obligations under the policy.

After securing his judgment against Bryers, Allen filed a Rule 90 garnishment action listing Bryers as the debtor and Atain as the garnishee. Allen's exceptions, objections, and denials of Atain's interrogatory answers alleged that Atain wrongfully refused to defend Bryers, refused to settle in bad faith, and refused to defend Bryers in bad faith. Allen moved for summary judgment on his claim for garnishment. In granting summary judgment, the circuit court found that Atain wrongfully refused to defend Bryers.[1] The circuit court then awarded Allen the full $16 million from his tort judgment against Bryers, far in excess of Atain's $1 million policy limit. Atain appealed, first to this Court, and then to our Supreme Court.

---

[1] Our Supreme Court's assessment of the facts, by which this court is bound, were that Allen "failed to demonstrate Insurer engaged in bad faith in refusing to defend or settle his claim." *Allen v. Bryers*, 512 S.W.3d 17, 23 (Mo. banc 2016). In reviewing the trial court's findings the Supreme Court states that, "while the garnishment court found Insurer refused to defend and refused to settle, it made no finding of bad faith." *Id.* at 38. Similarly, the Court states, "While it is clear Insurer wrongfully refused to defend Bryers, the garnishment court did not find that Insurer acted in bad faith." *Id.* at 39.

2

The Supreme Court affirmed and modified the judgment, holding, *inter alia*, that Atain was bound by the results of the underlying litigation where it refused to defend Bryers, and that Atain also had to pay post-judgment interest on the entire $16 million judgment. *See Allen v. Bryers*, 512 S.W.3d 17 (Mo. banc 2016), as modified (Apr. 4, 2017), reh'g denied (Apr. 4, 2017). The Court modified the lower court's judgment by reducing the award to the policy limits of $1 million, explaining that because the circuit court did not find that Atain acted in bad faith, it exceeded its authority in granting the full $16 million. Id. at 39-40. Allen filed a motion for rehearing or to modify the judgment. In his motion, Allen argued, among other things, that "the issue of whether Atain acted in bad faith was not resolved by the [circuit court's] modified judgment granting Franklin Allen's motion for summary judgment and this matter should be remanded to the garnishment court for a trial on the issue of Atain's bad faith." The Supreme Court denied Allen's motion. By its own motion, the Court modified its opinion and mandate on April 4, 2017. *Id.* In its modified opinion, the Court remanded the matter to the circuit court "for entry of a judgment awarding Allen $1 million plus post-judgment interest on the entire $16 million underlying tort judgment until Insurer pays, offers to pay, or deposits in court its $1 million policy limit." *Id.* at 39.

Upon remand, in June 2017, the circuit court calculated the post-judgment interest and entered judgment of $1 million plus interest on the $16 million underlying tort judgment. In November of 2017, after the judgment was satisfied, Allen then moved the court to set a trial date for his bad faith claims. The court declined to do so in an order dated April 4, 2018, explaining that the Supreme Court's mandate left it with no authority to do anything other than enter judgment as it already had. Allen then filed his notice of appeal on April 13, 2018. This Court, having noticed that the circuit court's April of 2018 order was not denominated a judgment, requested

suggestions from the parties. Both parties responded, and Allen moved the circuit court to denominate its April order a judgment. The circuit court sustained the motion, but did not file a properly labeled final judgment until June of 2018. Atain filed a motion to dismiss on May 11, 2018, which was taken with the case.

## DISCUSSION

We first address the timeliness of Allen's appeal. When he filed his notice of appeal, the court's April 4, 2018 order which he was appealing did not meet the requirements of Rule 74.01 for final, appealable judgments. However, the court eventually denominated its order as a final judgment. Rule 81.05 clearly states that appeals filed prematurely are deemed timely filed once the court enters a final judgment which comports with the requirements of Rule 74. Therefore, Allen's appeal of the court's April 4, 2018 order is timely. However, in its motion to dismiss and in its brief, Atain argues that the court's June 2017 judgment, entered immediately after remand from the Supreme Court, was the final judgment in this case, and, therefore, Allen's failure to appeal that judgment in a timely fashion means his appeal is now time barred.

"A final judgment is a prerequisite for appeal. Absent a final judgment, there is no appellate review…" *Green v. State*, 494 S.W.3d 525, 527-528 (Mo. banc 2016) (citation omitted) (superseded on other grounds). "The principle that 'a final, appealable judgment is ordinarily one that disposes of all parties and all the issues in the case' is 'as applicable to garnishment cases as to others.'" *McGathey v. Davis*, 457 S.W.3d 867, 873 (Mo. App. 2015) (citation omitted). "A final judgment is one that resolves all claims and issues in a case, leaving nothing for future determination." *Green*, 494 S.W.3d at 527. To be a final judgment on a claim, a judgment must dispose of all counts in a plaintiff's pleadings, and not just rule "on some of several issues arising out of the same transaction or occurrence which does not dispose of the *claim*." *Buemi v.*

4

*Kerchhoff*, 359 S.W.3d 16, 22 (Mo. banc 2011) (quoting and discussing *Gibson v. Brewer*, 952 S.W.2d 239 (Mo. banc 1997)).

In the present case, the question of whether the June 2017 judgment was final, is inextricably linked with Allen's point on appeal which asks whether the Supreme Court's mandate left open the possibility for those claims to be ruled on by the circuit court. Thus, we must address the merits of Allen's point on appeal. *Cf. Est. of Shaw*, 256 S.W.3d 72, 77 (Mo. banc 2008) (appellate court has jurisdiction to determine whether circuit court had jurisdiction to enter a challenged judgment).[2]

In his sole point on appeal, Allen argues that the circuit court erred in determining that it lacked subject matter jurisdiction to address Allen's bad faith claims against Atain. In denying Allen's motion for a trial on his bad faith claims, the court held that the mandate from the Supreme Court was a specific mandate which left the court with no authority to do anything other than enter final judgment exactly as required by the Supreme Court. Allen argues that the Supreme Court's mandate was specific to his wrongful refusal to defend claim, and that no court, including the Supreme Court, definitively ruled on his bad faith claim. Accordingly, Allen claims the circuit court still had jurisdiction to address those claims. We disagree.

"Where the judgment of an appellate court calls for the remand of the cause to the trial court for further action the judgment is not self-executing but must be certified back to the trial court for execution. This is done in this state by what is called the mandate, and by it authority and jurisdiction is granted to the lower court to take such steps as are directed." *Durwood v. Dubinsky*, 361 S.W.2d 779, 783 (Mo. 1962). "The scope of the trial court's authority [on remand] is defined

---

[2] Atain's Motion to Dismiss Allen's appeal, taken with the case, is denied.

by the appellate court's mandate." *Guidry v. Charter Communs., Inc.*, 308 S.W.3d 765, 768 (Mo. App. 2010) (quoting *Pope v. Ray*, 298 S.W.3d 53, 57 (Mo. App. 2009)). "We review *de novo* whether the trial court followed the mandate." *Guidry*, 512 S.W.3d at 768 (citing *Durwood*).

"There are two types of remands: (1) a general remand, which does not provide specific direction and leaves all issues open to consideration … and (2) a remand with directions, which requires the trial court to enter a judgment in conformity with the mandate." *State ex rel. St. Charles Cnty. v. Cunningham,* 401 S.W.3d 493, 495 (Mo. banc 2013). "The appellate court's mandate, in conjunction with its opinion, serves to instruct the circuit court as to which type of remand has been ordered." *Smith v. Brown & Williamson Tobacco Corp.*, 410 S.W.3d 623, 633 (Mo. banc 2013). "Where the mandate contains express instructions that direct the trial court to take a specified action, the trial court has no authority to deviate from those instructions." *Edmison v. Clarke,* 61 S.W.3d 302, 310 (Mo. App. 2001).

It is immediately apparent that the Supreme Court's remand in the present case was a specific remand which provided detailed instructions. The Court left the circuit court no room to alter, modify, or otherwise stray from its mandate in executing the judgment as to Allen's garnishment claim. As to the Court's opinion pertaining to the bad faith issues, it held that Atain could not be held liable for the full $16 million judgment absent a finding of bad faith, and the "garnishment court did not find that Insurer acted in bad faith." *Allen*, 512 S.W.3d at 39.[3]

---

[3] Although the Court stated that, "whether an insurer acted in bad faith is generally a fact question for the jury," in this case Allen asked the garnishment court to decide the bad faith issues and concedes the same on appeal. Rule 90, under which Allen filed, states that, "If the garnishor files exceptions to the garnishee's answers to interrogatories … the *court or jury* shall determine all controverted issues raised by garnishor's exceptions …." Rule 90.10(b). (Emphasis added).

6

Allen's present contention that the court failed to reach the bad faith issues and granted only partial summary judgment misinterprets the claim before the court. Allen was seeking to enforce only one legal right – the right to traditional garnishment. Allen argued, 1) the right to garnish the entire $16 million judgment because of Atain's wrongful refusal to defend, 2) the right to garnish the entire $16 million for bad faith refusal to settle, 3) the right to garnish the entire $16 million for bad faith refusal to defend, and 4) the right to garnish the entire $16 million because Atain was bound by the terms of the section 537.065 agreement and the circuit court's underlying tort judgment. Allen's claim was not one of equitable garnishment which permits the filing of separate claims of bad faith.

"Traditional garnishment and an equitable action filed pursuant to section 379.200 are not mutually exclusive remedies." *Allen*, 512 S.W.3d at 30 n.8. Although an equitable action is limited to the policy limits provided for in the contract of insurance, a "plaintiff may assert additional claims that go beyond the mere satisfaction of the underlying judgment for the contractual limits such as an insurer's alleged bad faith in refusing to defend or settle the claim that, if proven, would permit recovery beyond the insurance policy limits." *Id.* Traditional garnishment actions under Chapter 525 and Rule 90 are ancillary proceedings growing out of, and dependent on, an underlying original or primary action or proceeding and used to collect upon rights that have been adjudicated in an existing judgment. *Sauvain v. Acceptance Indemnity Insurance Company* 500 S.W.3d 893, 898 (Mo. App. 2017).

Here, Allen requested summary judgment on his traditional garnishment claim arguing there were no issues of material fact in dispute to resolve that claim. Allen's garnishment action contained the same style and case number as the underlying tort judgment and was presided over by the same circuit judge. *Allen*, 512 S.W.3d at 26. Allen's uncontroverted facts to support his

7

entitlement to summary judgment mirrored the facts found in the underlying tort judgment. *Id.* at 27. Allen expressly asked the court to rule on the issues of bad faith in his suggestions in support of summary judgment, explaining how Atain acted in bad faith in both breaching its duty to defend and breaching its duty to settle. Allen stated that, "[s]ince this Court presided over Atain's four (4) Motions to Dismiss and determined that Allen's injury 'did not involve an assault, a battery or any intentional act,' the Court is uniquely situated to confirm that Atain's conduct epitomizes an insurer's bad faith in refusing to defend its insured." Allen argued, nevertheless, that although Atain acted in bad faith, no such finding was necessary to hold Atain liable for damages in excess of Atain's policy limits. Atain disagreed. The court ruled on Allen's garnishment claim and, in so ruling, found no bad faith.

Allen now argues the court's judgment was a partial summary judgment and his claims of bad faith were unresolved. We disagree. The court's judgment shows the court considered the bad faith issues, expressly finding Atain was liable to pay "extra-contractual damages" even absent a finding of "bad faith." In the circuit court's later order denying Allen's post-mandate Motion for Trial Setting on the bad faith issues, the circuit court states:

> Since the Supreme Court did not issue a general remand, this Court does not have jurisdiction to consider any issues other than those necessary to execute the judgment mandated by the Supreme Court's opinion. Neither *re-litigation of Insurer's bad faith* nor award of interest on the June 6, 2017 post-judgment interest award is necessary to execute the judgment. Instead, either would undermine the Supreme Court's finding that Plaintiff is only entitled to the $1 million insurance policy limit plus post-judgment interest on the entire $16 million underlying tort judgment.

(Emphasis added). The court's use of the word "re-litigation" suggests the trial court considered the bad faith issues resolved.

In the underlying case, Atain argued to our Supreme Court that Allen's claim for $16 million was based on separate, independent claims of breach of contract and/or bad faith not recognized in a statutory garnishment action. Our Supreme Court factually distinguished the case relied on by Atain, *Landmark Bank of Ladue v. General Grocer Co.*, 680 S.W.2d 949 (Mo. App. 1984), as an attempt by the garnishor in a traditional garnishment action to bring separate and independent actions against the garnishee for damages not owed by the judgment debtor. *Allen*, 512 S.W.3d at 37. Here, judgment debtor Bryers had a $16 million judgment against him and assigned to Allen any personal right to recovery of insurance proceeds from Atain. Our Supreme Court explained that Allen's bad faith issues were filed in Allen's traditional garnishment action as exceptions to Atain's answers to Allen's interrogatories. *Id.* After a lengthy discussion of what constitutes "bad faith," the Court concluded that, because the garnishment court made no finding of bad faith, Allen was restricted to recovery under Bryers's policy limits. *Id.* at 39. We perceive from this ruling that, while bad faith claims are still prohibited as new, separate claims directly against an insurer in a traditional garnishment action, bad faith in the underlying action may be considered by the garnishment court as part of its determination as to the extent to which the garnishee is obligated to the debtor.

A request for garnishment may be filed by a garnishor who, among other things, knows or has good reason to believe the garnishee is indebted to the debtor. Rule 90.02. Once the garnishment court has determined the garnishee owes the debtor, "the court shall enter up judgment against the garnishee for the *proper amount* or value as found in money, and execution may issue forthwith to enforce such judgment." § 525.200 (emphasis added). Hence, it is the role of the garnishment court under Rule 90.10(b) and Section 525.200 to determine the extent to which the garnishee is indebted to the debtor so the "proper amount" may be garnished. Whether the

9

garnishee is indebted to the debtor for extra-contractual damages for bad faith is a proper consideration if the underlying record supports the same. "The facts decided in the underlying action most often will determine whether there is a duty to indemnify." *Allen*, 512 S.W.3d at 33. (internal quotation marks and citation omitted). It follows, then, that the underlying action might also reveal bad faith.

Here, our Supreme Court explained that, because Atain filed a declaratory judgment action, that action was treated as a refusal to defend and the facts showed the refusal was unjustifiable. *Id.* at 32. Consequently, because Atain had the opportunity to control and manage the underlying litigation and declined, Atain was bound by the result of the litigation. *Id.* at 32-33. Allen proved Atain wrongfully refused to defend Bryers, allowing garnishment against Atain for the limits of the insurance policy. *Id.* at 36-37. Because the court did not find Atain acted in bad faith, Allen was only entitled to the policy limits per *Landie v. Century Indemnity Co.*, 390 S.W.2d 558, 562 (Mo. App. 1965).[4] *Id.* at 39. *Landie* states that breach of an obligation to defend requires the insurer put the insured in a position equally as good as that which he would have occupied if the insurer had performed its contract. *Landie*, 390 S.W.2d at 565. And, because the insurer was obligated to give good faith consideration to the possibility of settlement within the policy limits, if the insurer refused to accept an offer of settlement in bad faith, the insurer is liable for any part

---

[4] In *Columbia Cas. Co. v. HIAR Holding, L.L.C.*, 411 S.W.3d 258 (Mo. banc 2016), an insured filed a declaratory judgment action to litigate coverage issues arguing that the insurer had a duty to indemnify the insured for the full settlement, plus interest, because the insurer acted unreasonably and in bad faith. Our Supreme Court agreed. *Id.* Our Supreme Court distinguished *Columbia Casualty* from the case before us on the grounds that, 1) *Columbia Casualty* was a declaratory judgment action and not a traditional garnishment case, 2) the declaratory judgment court explicitly found the insurer engaged in bad faith in both refusing to defend and settle which was not challenged on appeal, and 3) because the insurer acted in bad faith in refusing to defend and settle, the insurer was liable for the entire amount of the judgment beyond the policy limits. *Allen*, 512 S.W.3d at 38.

of the judgment the insured paid over and above policy limits. *Id.* at 565-566. Hence, a finding

of bad faith has long been required before damages in excess of policy limits can be awarded.[5]

Because this was a traditional garnishment claim, the trial court's failure to find in favor of

Allen on the bad faith issues was not equivalent to an unreviewable denial of summary judgment

on separate claims. The court's judgment disposed of the garnishment claim and all issues within

that claim. The court's bad faith findings, or lack thereof, were appealable, and an appeal was

necessary to preserve those issues for further review. If the parties were concerned the court's

order needed clarification, the parties could have filed a motion to amend the judgment under Rule

78.07. Significantly, had Allen truly believed the issues of bad faith were undisposed, or could

have been resolved in his favor with additional evidence, Allen should have protested Atain's

appeal of the court's judgment as premature.[6] Pursuant to Rule 74.01(b), when more than one

claim for relief is presented in an action, the court may enter a judgment as to one or more but

fewer than all claims "only upon an express determination that there is no just reason for delay."

Absent this determination, the court retains jurisdiction and an appeal cannot be taken.[7] Atain

---

[5] It is helpful to remember that the insured in refusal to defend/settle cases is always the initial wrongdoer and ultimately responsible to the injured party. The insured and the insurer enter into contracts whereby the insurer agrees to pay damages incurred by the insured up to a policy limit. Cases such as *Landie* provide that, in order to force an insurer to pay more than what the insurer contracted to pay, a finding of bad faith refusal to defend/settle is required.

[6] A circuit court's judgment is final as to particular claims only when it disposes of a distinct "judicial unit." *Gibson*, 952 S.W.2d at 244. "The required 'judicial unit for an appeal' has a settled meaning: the final judgment on a claim, and not a ruling on some of several issues arising out of the same transaction or occurrence which does not dispose of the claim." *Id.* (internal citations and quotation marks omitted). "It is differing, separate, distinct transactions or occurrences that permit a separately appealable judgment, not differing legal theories or issues presented for recovery on the same claim." *Id.* Our Missouri Supreme Court agreed with federal court interpretation of the meaning of "one claim for relief" in *Committee for Educational Equality v. State*, 878 S.W.2d 446, 451 (Mo. banc 1994), and found that, "[i]f a complaint seeks to enforce only one legal right, it states a single claim, regardless of the fact that it seeks multiple remedies." Further, "a claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Id.* The Court concluded that Rule 74.01(b) served the purpose of avoiding redundant review of multiple appeals based on the same underlying facts and similar legal issues. *Id.*

appealed the court's judgment under no protest as to its finality. Allen's first notice that he considered the bad faith issues unresolved came after our Supreme Court issued an Opinion following Atain's appeal. The Supreme Court rejected Allen's plea for additional consideration of the bad faith claims by issuing a specific remand for the limited purpose of calculation of post-judgment interest.

We find that the trial court correctly determined it had no jurisdiction to preside over re-litigation of Allen's bad faith claims.[8] The circuit court's judgment is affirmed.

Anthony Rex Gabbert, Judge

All concur.

---

[7] "Though garnishment proceedings aid in the enforcement of a judgment, and are thus special proceedings within the ambit of section 512.020, not every order issued in a garnishment proceeding is a special order that can be appealed. Only after a final judgment is entered in a garnishment action does an appeal lie." *McGathey v. Matthew K. Davis Trust*, 457 S.W.3d 867, 873 (Mo. App. 2015) (internal citations and quotation marks omitted).

[8] "[T]he res judicata doctrine prevents plaintiffs from relitigating issues already determined against them in a prior action." *Snelling v. Kenny*, 491 S.W.3d 606, 613 (Mo. App. 2016). "[R]es judicata applies not only to the specific issues ruled upon by the court and used to form the court's judgment, but also to issues that the parties could have brought in the previous litigation." *Id.* Similarly, the doctrine of law of the case "governs successive adjudications involving the same issues and facts." *Walton v. City of Berkeley*, 223 S.W.3d 126, 128-129 (Mo. banc 2007). It also bars relitigation of issues not only expressly raised and decided on appeal, but also those that could have been raised but were not. *Id.*